# THE SUPREME COURT

OF THE

# STATE OF ILLINOIS,

OF CASES ARGUED AT

## JANUARY TERM, 1863, AT SPRINGFIELD.

---

HENRY R. GILLESPIE, Appellant, *v.* DAVID A. SMITH, HENRY B. McCLURE, and JAMES A. LURTON, Appellees.

### APPEAL FROM MORGAN.

The similiter, to a plea of not guilty, or to any negative plea, can be added by the defendant, if he chooses to do so, and it is not error to proceed to trial without it.

The specific objections to the testimony must be stated in the court below. If the exception is general, then the particular objections cannot be insisted on, for the first time, before this court.

But the party is not precluded from showing in this court the insufficiency of the evidence, or from availing himself of radical defects in the instruments of evidence which could not be obviated by proof, and which strike at the foundation of the plaintiff's claim.

There is no right of redemption from a sale under a deed of trust, when the deed conveys the absolute title to the trustees, on a declared trust.

It is only on the ground of fraud, or where some one may have been prejudiced by a sale of real estate *en masse*, that the sale will be set aside in equity, because the property was not sold in separate parcels.

A trustee may employ an agent to perform the mechanical parts of a sale, to act as auctioneer, or to advertise and sell the lands held in trust, and such employment is not a delegation of the trust confided to him.

31

THIS was an action of ejectment in the Morgan Circuit Court, to recover certain lands described in three declarations filed against said Gillespie and two of his tenants. By consent of the parties the three cases were consolidated, and thereafter the case progressed as one case against Gillespie. Possession of the defendant was admitted, and the plea of not guilty, filed.

The testimony on the part of the plaintiffs, consists of a deed of trust from Gillespie, to William A. Gregory and Henry Whitmore, of St. Louis, to secure two notes due from Gillespie to Rhodes, Pegram & Co., of about $8,500. This deed contained a clause giving the power of selling the land, to pay this debt, if Gillespie failed to pay when due.

Under this deed, the money not being paid by Gillespie, the two trustees, residing at St. Louis, authorized David A. Smith, of Jacksonville, to execute the trust and sell the land, and on the 1st day of February, 1856, Smith sold said land, consisting of twenty-three separate tracts, all in one body, at one out-cry, to one bidder, J. W. Robinson, who bid for the whole in one bid, $8,988.26, which just paid the debt and costs. None of said land was offered in separate tracts.

Said purchaser, Robinson, immediately afterwards turned over his bid to one Benjamin Newman, for $11,600, being an advance of $2,611.75 over the sum he gave, and on the 12th day of March, 1856, in St. Louis, said trustees, in pursuance of this sale by Smith, conveyed all of said land to said Newman.

This deed has prefixed to it the printed notice of the sale of said lands, certified by the printer, and also has prefixed to it, and made a part of it, an instrument executed at the time of the sale, and purporting to be a memorandum or statement of the public sale of said lands, pursuant to the terms of the deed of trust aforesaid, to one Robinson, who was the highest bidder therefor, and also purporting to be an assignment of said Robinson's interest, acquired by said purchase, to Benjamin Newman.

This instrument was attested by David A. Smith, and was executed under the hands and seals of appellant, Gillespie and said Robinson.

This instrument recites that the sale is made, and all the lands described in the deed are sold in one parcel to said Robinson for $8,988.26, with the assent of said Henry R. Gillespie, and then states that said Robinson has sold and assigned the benefit of his purchase to Benjamin Newman for $11,600, and requests said trustees, Gregory and Whitmore, to convey the lands to said Newman.

The third link in the chain of title was a deed of trust or assignment, made by Benjamin Newman and wife, to Jesse T. Newman and John B. Duncan, for the benefit of Newman's creditors. This deed provided that the lands, if not sold at private sale by a certain day, should be sold at public sale, (but not at a sacrifice) on a credit of one, two, three and four years.

Doubts were entertained about the validity of this deed, and articles of agreement were entered into by Benjamin Newman and his wife, the trustees, Jesse T. Newman, John B. Duncan, and the creditors of said Benjamin Newman, which provided for an appraisement of the lands, and authorized first, the preferred creditors, and then the unpreferred, to take specific tracts at their appraised value in payment of their demands, and empowered said trustees to convey the land so selected in fee simple to their creditors. Under this agreement, Duncan and Newman deeded the land in controversy to the appellees.

The execution of all the above deeds was either proven or admitted.

All this testimony was excepted to by the defendant, but he presented no specific objections. The court admitted it, and exceptions were regularly taken, a verdict was rendered for the plaintiff, a new trial was moved and overruled, exceptions taken, and judgment rendered on the verdict, and appeal taken.

The only additional errors assigned, relate to the form of the verdict, and to the omission, on the part of the appellees, to add the similiter to appellant's plea of not guilty.

The verdict describes the lands, parts of section, township, range, meridian, county and State, and finds that appellees

are seized and entitled to hold the same as joint tenants in fee simple, and ˚that appellant is guilty, etc., in manner and form as alleged in the declaration.

M. McConnel, for Appellant.

Smith & McClure, for Appellees.

Breese, J. The appellant assigns for error on this record, that the court erred in admitting as evidence each of the deeds and papers offered by the plaintiffs and objected to by the defendants; in overruling the defendant's motion for a new trial, and refusing to set aside the verdict; in rendering a judgment in the cause, in manner and form as shown in the record; and, further, in permitting the plaintiffs to call a jury, and proceeding to try the cause, when the defendant's plea of not guilty was not denied and issue joined.

It appears from the record, that three actions of ejectment were brought in the Morgan Circuit Court, by the appellees against the appellant, for different tracts of land, of which the appellee admitted he was in possession, and on his motion and affidavit, they were consolidated into one action, to which the appellant pleaded not guilty. A trial was had, and a verdict and judgment for the appellees. A motion for a new trial was entered, which was overruled, and a judgment rendered on the verdict for the appellees.

We do not think any one of the errors are well assigned. As to the last, taking them in reverse order, it ought to be considered, at this day, as a frivolous objection, unworthy of consideration. The similiter to a plea of not guilty, or to any negative plea, can be added by the defendant if he chooses to add it, and it is not error to proceed to trial without it. *Waters* v. *Simpson*, 2 Gilm. 577; *Williams* v. *Brunton*, 3 Gilm. 625; *Stumps* v. *Kelley*, 22 Ill. 140; *Walker* v. *Armour*, 22 Ill. 659.

As to the third error, the record shows this form of verdict, and the judgment thereon: The jury say that the defendant is guilty of unlawfully withholding from the plaintiffs the premises described in the plaintiffs' declaration, (describing

them,) and they further say that the plaintiffs are seized and entitled to hold the aforesaid premises as joint tenants in fee simple, as the plaintiffs have, in their declaration, complained against the said defendant. The judgment is in strict conformity with this finding, and both are in full compliance with all the requirements of the statute. The premises are described in the verdict—the unlawful possession by the defendant found, and the estate specified, and the judgment of the court is, that the plaintiffs recover the possession of the premises according to the verdict of the jury, so that, "in manner and form," the judgment was correctly rendered. (Scates' Comp. 217.)

As to the second error assigned, the reasons for a new trial were, First, That the court admitted as evidence of title to the land in controversy, the deed from one Benjamin Newman and wife, to Jesse T. Newman and John B. Duncan, the same being a special deed of trust, together with a paper purporting to be a deed for said lands from the said Jesse T. Newman and John B. Duncan, to the plaintiffs.

Second, The court admitted as evidence of legal title in this cause, a paper signed by Benjamin Newman and others, not conveying the land in controversy to any person, or being a deed of any kind conveying to the plaintiffs any portion of said land; and,

Third, All the deeds and papers presented in evidence in said cause, by the plaintiffs, were inadmissible as evidence, and did not prove a legal title in the plaintiffs.

This error will be considered in connection with the first error assigned, as they embrace the same matters.

The bill of exceptions recites, that "the above papers, the execution of which was duly proven or admitted, was all the paper evidence in the case." The bill of exceptions further states, "The defendant objected to said evidence going to the jury, which objection was overruled by the court." The objection to these several instruments of evidence is general, no special objection to any one of them being stated. Such objections cannot now, for the first time, be heard in this court. This is a settled rule.

In the case of *Conway* v. *Case*, 22 Ill. 139, this court said, that parties could not be permitted to stand by, and permit evidence to be introduced, without specific objections, which is competent evidence in itself, and the objection to which is formal and can be obviated if made by proof, and afterwards make the introduction of such evidence ground of objection in this court.

In *Sargeant* v. *Kellogg*, 5 Gilm. 281, it was held, where various objections may be made to evidence, some of which may be removed by other proof, the party making the objections ought to point out specifically those he insists on, and thereby put the adverse party on his guard, and afford him an opportunity to obviate them. He should not be permitted, after interposing a general objection, to insist on particular objections in this court, which, if they had been suggested in the court below, might have been instantly removed. So in the case of *Swift et al.* v. *Whitney et al.*, 20 Ill. 144, and in *Buntain* v. *Bailey*, 27 Ill. 410, it was held, where evidence is obnoxious to a special objection, that objection must be stated. But the party is not precluded from showing in this court and insisting upon the insufficiency of the evidence, or of availing himself of radical defects in the instruments of evidence, which could not be obviated by proof, and which strike at the foundation of the plaintiffs' claim.

The defendant was the source of the plaintiffs' title—they claiming through a deed executed by him to Gregory and Whitmore. This deed is tri-partite—appellant and wife being parties of the first part, Gregory and Whitmore parties of the second part, and Rhodes and Pegram, as partners, party of the third part. It is in the usual form of a deed of trust, conveying to them absolutely and to the survivor of them the premises in controversy, together with a large number of other tracts of land, "In trust, however, for the following purpose : whereas the mercantile firm of H. R. ·Gillespie & Co., of which said Henry R. Gillespie is a member, have executed and delivered to Rhodes, Pegram & Co., their two negotiable promissory notes of even date herewith, both payable to the order of said Rhodes, Pegram & Co., one for the sum of four

thousand two hundred and thirty-eight and eighty-seven hundredths dollars, due on the first of May, 1855, and the other for the sum of four thousand four hundred and seventy and twelve one-hundredths dollars, due on the 15th of August, 1855. Now, if said notes shall be well and truly paid at their maturity, respectively, then this deed shall be void, and the property hereinbefore conveyed shall be released at the cost of the said parties of the first part, but if said notes, or either of them, or any part of either, shall not be so paid, then this deed shall remain in force, and the said parties of the second part, or the survivors of them, or the heirs and assigns of such survivors, may proceed to sell the property hereinbefore described, or any part thereof, at public vendue, to the highest bidder, at the court-house, in Jacksonville, Illinois, for cash, first giving twenty days public notice of the time, terms and place of said sale, and of the property to be sold, by advertisement in some newspaper, printed in said Jacksonville; and upon such sale shall execute and deliver a deed in fee simple of the property sold, to the purchaser or purchasers thereof, and receive the proceeds of said sale, and out of them pay, first, the costs and expenses of this trust, and next, whatever balance may be unpaid on said notes, whether matured or not, rebating interest at the rate of ten per cent. per annum on such portion thereof as has not then matured, and the remainder pay over to the party of the first part, with a covenant that the party of the second part will faithfully execute the trust," etc. The deed is dated Jan. 19, 1855, and duly acknowledged and recorded.

The notes being unpaid, the trustees, on the 11th of January, 1856, advertised the lands in the mode required by the deed for sale on the 1st of February, 1856, without redemption, and on that day, they were sold at public vendue at the place designated, by David A. Smith, acting as agent of the trustees, in one parcel, to one James W. Robinson who was the highest bidder, for the gross sum of eight thousand nine hundred and eighty-eight dollars and twenty-six cents, which was paid down in cash.

Immediately after the sale, Robinson permitted Benjamin

Newman to take his place as purchaser, in consideration of eleven thousand six hundred dollars paid him, and on the 12th of March, 1856, the trustees executed the deed to Newman. This deed recites, the printed advertisement for the sale of the lands, describing them particularly, with the printer's certificate, and there is made, as part of this deed, an instrument executed five days after the sale, signed by appellant and Robinson, of the following purport: "Pursuant to the foregoing annexed notice, at the time and place therein specified, with the assent of the undersigned, Henry R. Gillespie, the lands specified in said notice, were offered to sale in one parcel by David A. Smith, as agent for the trustees named in the aforesaid notice, and on such offering were struck down to the undersigned, James W. Robinson, at the sum of eight thousand nine hundred and eighty-eight dollars and twenty-six cents, he being the highest and best bidder therefor, which he paid in hand in full satisfaction of the deed of trust referred to in said notice, and the costs and charges of executing and foreclosing the same; and in consideration of the sum of eleven thousand six hundred dollars, the said undersigned assigns and transfers his said purchase, and all benefit of the same, to Benjamin Newman, and requests said trustees to execute to him, his heirs and assigns, the proper deed of conveyance and assurance of the premises. Given under our hands and seals, at, etc., this 6th day of February, 1856."

After these recitals, the deed conveys and quit-claims the lands to Benjamin Newman, " his heirs and assigns forever."

In opposition to these facts it is now said, the deed of appellant was but a mortgage—a mere security for the payment of his notes, and that the sale of the lands was invalid, they having been sold *en masse*, and without redemption.

Acknowledging to the fullest extent the doctrine, that in construing deeds and other written instruments, that the intention of the parties, to be ascertained from the face of the paper, must control, we are entirely satisfied that this deed was a trust deed, and conveyed the absolute legal title in the lands to the trustees, Gregory and Whitmore.

There is no single expression in this deed characteristic of a mortgage. The intention of the parties is so manifest that it was designed to convey the legal title upon a declared trust, that argument could not make it plainer. Nothing contained in the deed, raises a presumption even, that it was intended only as a security in the nature of a mortgage, but for what it really is, an absolute conveyance on a declared trust. If the deed was a mortgage, the argument of the appellant as to the sale under it, might have force, but being a trust deed, it is out of place.

The deed of trust conveying an absolute title in fee simple to the trustees, by their sale and conveyance to Newman, the like title was vested in him. No right of redemption exists in any party. It is only where lands are sold under a decree in equity for the sale of mortgaged lands, that a mortgagor can redeem. (Scates' Comp. 977.) Here was no mortgage and no judicial proceedings, but an absolute sale of the lands by the parties holding the title in fee simple. A deed of trust, or a mortgage with power to sell, renders an application to a court unnecessary.

That it was sold *en masse,* cannot now be objected, as the record shows, they were so sold with the assent of the appellant, who acknowledged at the same time the agency of the party selling. It is only upon the ground of fraud, or that some one may have been prejudiced by a sale of real estate *en masse,* that the sale will be set aside in equity because the property was not sold in separate parcels. *Ross* v. *Mead,* 5 Gilm. 171. Nothing of this kind is shown in this case. We know no rule of law forbidding the absolute owner of land from employing an agent to conduct the mechanical parts of a sale, or acting as the auctioneer, even if the legal title is held on a trust declared. It is the uniform practice, to employ an agent to advertise and sell lands under such deeds. It is no delegation of any trust confided to the trustees. Although trustees may not in general delegate their powers, yet that they may employ solicitors and agents to do ministerial acts, such as the sale of property and acts of that nature, the trustees retaining a supervisory power of them, has never been

questioned. Hill on Trustees, 474, 541. But they were the absolute owners of the fee in the lands, and had the ability of themselves to sell them, and the rule is well understood, where a party is in this position, he may act by an agent or attorney. Story on Agency, sec. 16; *Mason* v. *Wait*, 4 Scam. 133. But the conclusive answer is, that the appellant was present, and made no objections, but in fact assented in writing.

But the appellant's counsel says, there is no evidence of this assent to sell *en masse*, except these recitals in the deed, and they are not admissible as evidence against appellant, or any one else, but the makers of the deed. This recital sets forth a written agreement between appellant and Robinson, the highest bidder and purchaser at the sale, that the sale of the lands in one mass, and turning over the bid to Benjamin Newman, were made and done with the consent of appellant. He no doubt received the benefit of the advance paid by Newman. But the specific objection, that appellant had not executed any such assent or agreement, was not made on the trial. Had it been made, it could have been easily removed, by calling the subscribing witness, Mr. Smith, who was in reach of the court. Such proof was waived, and the instrument used as evidence without a specific objection to this, or to any other particular portion of it. But did not Robinson and the appellant, by their own voluntary act, become parties to this deed? They certainly did, and being parties to it, are bound by the recitals in it.

The objection going to the acknowledgment of the deed, as having been taken before an officer not authorized to take it, is in the same category. It was not made in the court below, and the proper execution of the deed was admitted by the appellant.

There is no objection made to the deed of trust from Benjamin Newman to Jesse T. Newman and John B. Duncan, except want of title in B. Newman. This we have shown to have no foundation. B. Newman acquired an absolute title in fee, and he may have disposed of the lands, a matter about which the appellant cannot possibly have the least concern.

We refrain, therefore, from going into that portion of the case. The lands were disposed of by their owner, to pay his debts, by agreement with the most, if not all, of his creditors, and by a good and valid deed, the title to the premises in controversy has become vested in appellees. After the conveyance to Benjamin Newman, the appellant ceased to have any interest in the lands, and if Newman squandered them, his creditors, not appellant, have cause to complain. This is not a creditor's bill. He was fairly divested of his title, by his own voluntary deed, and the lands or their proceeds, were appropriated, according to the deed. They discharged his debts, and if they have not discharged Newman's also, if his creditors are losers, by the improper conduct of his trustees, with them lie the demand for a remedy.

We cannot see the slightest ground of defense to this action, and nothing to justify any claim set up by the appellant. Selling the lands *en masse* was his own act, and he can, therefore, allege no fraud therein. The deed was an absolute deed—the sale under it was irredeemable. To no act, done by the owner of them by the purchase at this sale, can the appellant take any exception, or claim any right, as against the appellees.

There being no error on the record, the judgment is affirmed.

*Judgment affirmed.*