### DAVID GALLUP ET AL. v. COUNTY OF LIBERTY.

Decided October 20, November 17, 1909.

**1.—County School Land—Sale by Agent.**

In 1881 a County Commissioners' Court made and entered an order wherein it was recited that in the judgment of the court it was for the interest of the county that its school land be sold and the proceeds be invested as provided by law, and to that end it appointed the county judge as agent for the county "with full power to sell all of said school land, either at private or public sale as in his judgment he may deem best for the interest of the county, and to make good and sufficient title to the purchaser or purchasers of said lands; provided that said lands or any part thereof shall not be sold for a less price than $1.50 per acre." On the same day the court made and entered another order allowing the agent five percent commissions on all sales of said land made by him. Shortly thereafter the agent sold the land for a cash consideration in excess of the minimum price fixed by the court, and executed a deed therefor to the purchaser. Held, the Commissioners' Court being itself a trustee as to the school lands belonging to the county, it had no authority to delegate

its trust or to vest an agent with discretionary powers in effecting a sale of said land, and the sale by the agent was therefore invalid.

**2.—Same—Cases Reviewed.** ·

Logan v. Stephens County, 98 Texas, 283, approved. Matagorda County v. Casey, 4 Texas Civ. App., 35; Nichols v. State, 11 Texas Civ. App., 327; Noel v. City of San Antonio, 11 Texas Civ. App., 586; Daniel. v. Mason, 90 Texas, 240, distinguished.

**3.—Same—Ratification.**

A Commissioners' Court having full power and authority under the Constitution and the statutes to sell the county school land, a sale of the same through or by an agent would be a mere irregularity which the court might cure by ratification. It would be otherwise if the court itself did not have the power in the first instance to sell the land, and in such case the doctrine of estoppel would have no application. The authority could not be created by estoppel.

**4.—Same—Same.**

Where a Commissioners' Court sold the county school land through the medium of an agent and accepted, retained and used the consideration for more than twenty years, it will be held to have ratified the unauthorized and illegal sale and to be estopped from recovering the land.

**5.—Trustee—Employment of Agents.**

While a trustee may not delegate the exercise of the judgment and discretion reposed in him, he may employ agents to a limited extent to aid him in the execution of the powers intrusted to him, but the powers of the agent must be restricted to carrying out the will and judgment of the trustee.

**6.—School Fund—Depletion—Commission to Agent.**

The fact that a Commissioners' Court unlawfully allowed an agent who effected a sale of the county school land to retain out of the purchase money the commissions which the court had agreed to pay him, would not affect the power of the court to ratify the acts of the agent in making the sale, nor prevent the purchaser from pleading ratification when the purchaser had no notice of the illegal agreement between the court and the agent when he paid the purchase money.

Appeal from the District Court of Polk County. Tried below before Hon. L. B. Hightower.

*Coke, Miller & Coke* and *Terry, Cavin & Mills,* for appellants.— The court erred in rendering judgment in this cause in favor of the . plaintiff against these defendants for the land in controversy and in failing and refusing to render judgment in favor of these defendants against said plaintiff for said land. Constitution of Texas, 1876, article 5, section 18; Constitution of Texas, article 7, section 6; Revised Statutes of Texas, articles 1550 and 4271; Matagorda County , v. Casey, 108 S. W., 476; Bland v. Orr, 90 Texas, 494-6; Mills· County v. Lampasas County, 90 Texas, 606.

If the order of the Commissioners' Court of July 1, 1881, was not within the power of the court and in all respects valid, the sale and conveyance made thereunder by Perryman, acting for and on behalf of Liberty County, to Allen, has been ratified and confirmed by said county and the Commissioners' Court thereof, and is in all respects valid and binding on said county.

The County Commissioners' Court of Liberty County was vested

with authority to make a sale of the land in question, being a portion of the school lands donated to said county by the State of Texas. If it be admitted that the order entered by said court, directing W. W. Perryman to sell the lands was beyond the authority of the Commissioners' Court, yet as the undisputed and uncontradicted evidence in this case shows that Perryman, who purported to act as the agent of Liberty County, reported said sale to the Commissioners' Court and that the Commissioners' Court of Liberty County, well knowing all of the facts connected with said sale, received the proceeds and benefits arising therefrom, and retained and used said proceeds and benefits, well knowing all the facts, for a period of twenty-six years before the filing of this suit, and has never tendered them to the purchasers from Perryman or his assigns, the county of Liberty has thereby ratified and confirmed the sale so made to Perryman, and as appellants held the title to the purchasers from Perryman, the county of Liberty can not now disaffirm said sale and recover the land involved therein, and it was error for the court below to render judgment in favor of the county. Boydston v. Rockwall County, 86 Texas, 234, 237, 238; Clark & Skyles on the Law of Agency, par. 98, 115, 119, 121, 140; Dillon on Municipal Corporations, par. 463, 547, 548; Meecham on Agency, par. 148, 149, 118; Smith on Municipal Corporations, par. 258, 259, 729; Smith v. Cantrel, 50 S. W., 1081; Merchants National Bank v. McAnulty, 31 S. W., 1097; City of San Antonio v. San Antonio Street Ry. Co., 22 Texas Civ. App., 153; 28 American and English Encyclopedia of Law, 2d ed., p. 990, notes and cases cited; 16 Cyc., pp. 784, 787, and cases cited; Singleton v. Scott, 11 Iowa, 589; Newton v. Bronson, 13 New York, 594; Ellis v. Ellis, 5 Texas Civ. App., 49; Williams v. Meyer, 64 S. W., 66.

Accepting and retaining the benefits arising from a conveyance by which one was not bound or which was voidable as to him with knowledge of the facts, is a ratification of such conveyance. This applies as well to municipal corporations and trustees as to any other class of persons. As to municipal corporatians, see: Boydston v. Rockwall County, 86 Texas, 234; City of San Antonio v. San Antonio St. Ry. Co., 22 Texas Civ. App., 153; City of Laredo v. McDonnell, 52 Texas, 529; City of Denison v. Foster, 28 S. W., 1052; Clark & Skyles on the Law of Agency, par. 121; Dillon on Municipal Corporations, par. 463, 547, 548; Smith on Municipal Corporations, par. 258, 259, 729; Elliott's Elements of Municipal Corporations, par. 175, and see generally the authorities cited under the preceding proposition.

As to trustees, see: Boydston v. Rockwall County, 86 Texas, 234; 16 Cyc., pages 784, 787; Williams v. Meyer, 64 S. W., 66; 28 American and English Encyclopedia of Law, 2d ed., page 990; Singleton v. Scott, 11 Iowa, 589; Newton v. Bronson, 13 N. Y., 594.

*Branch T. Masterson* and *Stevens & Pickett,* for appellee.—The Commissioners' Court of Liberty County had no power to delegate to W. W. Perryman the authority to sell the school land of Liberty County nor to contract to pay him five percent of the proceeds of sale, and the order entered July 1, 1881, was null and void, because it

attempted to vest in Perryman the discretionary powers which could only be exercised by the court, and because it attempted to appropriate five percent of the proceeds to Perryman for his personal use, and the deed executed by W. W. Perryman under that order did not divest the title vested by the Constitution and law in trust for the school children of Liberty County who are beneficiaries of the trust. Constitution of Texas, 1876, article VII, section 6, provides: "That said lands and proceeds thereof, when sold, shall be held by said counties alone as a trust for the benefit of public schools therein." Logan v. Stephens Co., 83 S. W., 365; Fuller v. O'Neil, 6 S. W., 181; Cassin v. LaSalle Co., 21 S. W., 122; Pulliam v. Runnels County, 15 S. W., 278; Dallas County v. Club Land & Cattle Co., 66 S. W., 294; Tomlinson v. Hopkins County, 57 Texas, 572; Delta County v. Blackburn, 93 S. W., 419; Blackburn v. Delta County, 107 S. W., 80; Taber v. Dallas County, 106 S. W., 332.

Ratification of a void deed executed by a trustee could only be by the beneficiary in the trust. The beneficiaries in this trust were the school children of Liberty County, who are minors, and could not ratify, and the trustee could not ratify its own illegal and void acts. Rue v. Missouri Pac. Ry. Co., 74 Texas, 480; Cummings v. Powell, 8 Texas, 85; Fourth Nat'l Bank of Dallas v. Dallas, 73 S. W., 841; Noel v. San Antonio, 33 S. W., 263; Daniel v. Mason, 90 Texas, 240; Murchison v. White, 54 Texas, 81; State Nat'l Bank v. Fink, 24 S. W., 939; Heidelburg v. St. Francois Co., 12 S. W., 914; Johnson v. School District, 67 Mo., 319; Maupin v. Franklin County, 67 Mo., 327; Wolcott v. Lawrence County, 26 Mo., 273; Cheeney v. Brookfield, 60 Mo., 54; Clark v. School Directors, 78 Ill., 474.

Receipt of part of the proceeds of the land by the Commissioners' Court could not operate as a ratification of the void deed executed by Perryman, nor would the county, as trustee, be thereby estopped from asserting title to the land. Henderson v. San Antonio & M. G. Ry. Co., 17 Texas, 575; Cassin v. La Salle Co.; 21 S. W., 122; Blackburn v. Delta Co., 107 S. W., 80; Dallas Co. v. Club Land & Cattle Co., 66 S. W., 294; Logan v. Stephens County, 83 S. W., 365; Delta County v. Blackburn, 93 S. W., 419; Taber v. Dallas County, 106 S. W., 333.

NEILL, ASSOCIATE JUSTICE.—"This suit was brought by the County of Liberty, appellee herein, against David L. Gallup and East Texas Oil Company, appellants herein, and C. M. Votaw, C. W. Nugent, Oscar E. Oates, A. G. Hodges, A. W. Hodges, J. K. Humble, J. W. Humble and E. D. Saunders, to recover the title to ten certain tracts of land, aggregating about sixteen thousand acres, situated in the counties of Polk, Hardin and Tyler. The suit was in the ordinary form of action in trespass to try title. Of the defendants, David L. Gallup was a resident and citizen of the State of New York, the East Texas Oil Company was a resident and citizen of the State of New Jersey, and all of the other defendants were residents of the State of Texas. The defendants, David L. Gallup and East Texas Oil Company, who are appellants in this court, filed petition and bond for removal of the cause to the Circuit Court of the United States

for the Southern District of Texas, upon the filing of which the plaintiff dismissed its suit as to all of the defendants except David L. Gallup, a citizen of New York, the East Texas Oil Company, a citizen of New Jersey, and J. W. and J. K. Humble, citizens of Polk County, Texas. The petition of these appellants for the removal of the cause to the Circuit Court of the United States for the Southern District of Texas, was granted, but the cause was remanded to the District Court of Polk County from the Circuit Court of the United States, and was tried in the District Court of Polk County. Judgment was rendered against the defendant J. W. Humble by default, and judgment *nil dicit* was rendered against the defendant J. K. Humble, and upon trial had, judgment was rendered for the land in controversy against the defendants Gallup and East Texas Oil Company, appellants here. These appellants answered in the court below by general demurrer, plea of not guilty, and also filed a cross-action against the plaintiff, seeking to recover the title and possession of the same land sued for by the plaintiff, upon which cross-action judgment was also rendered against these appellants. The trial court duly filed, at the request of appellants, his findings of fact and conclusions of law, which were excepted to by these appellants, who filed also a motion to correct and supplement said findings of fact and conclusions of law, which motion was overruled. The case has been properly brought to this court by appeal of these appellants, David L. Gallup and East Texas Oil Company." This statement of the nature and result of the suit, taken from appellant's brief, is accepted by the appellee, with this emendation: "Final judgment in favor of the County of Liberty was against defendants David L. Gallup, East Texas Oil Company, J. K. Humble and J. W. Humble, for the land in controversy," and is adopted by us.

The findings of fact and of law by the trial judge are as follows:

*Findings of fact.*—"I. I find that the ten tracts of land in controversy as described in plaintiff's first amended original petition were patented during the year 1858 by the State of Texas to the School Commissioners of Liberty County in due form of law.

"II. I find that on July 1, 1881, the Commissioners' Court of Liberty County made and entered on the minutes thereof the following order: 'Whereas, it is the judgment of the court that it is for the interest of Liberty County that all of the county school lands situated in the counties of Polk, Tyler and Hardin be placed on the market for sale, and the proceeds thereof invested as provided by law, it is therefore ordered by the court that W. W. Perryman be and he is hereby appointed agent of the County of Liberty, with full power to sell all of said school lands, either at private or public sale, as in his judgment he may deem best for the interest of the county, and to make good and sufficient title to the purchaser or purchasers of said lands; provided that said lands, nor any part thereof, shall not be sold for a less price than $1.50 per acre. It is further ordered that any sale made by said Perryman shall in nowise affect actual settlers of any rights acquired by them under the laws of this State,

and the price of land to such actual settlers is fixed at $2.00 per acre.'

"And also that said court on the same date made and entered on its minutes another order as follows: 'It is ordered by the court that W. W. Perryman be and he is allowed five percent commission on all sales made by him of the Liberty County school lands.'

"III. I find that W. W. Perryman, purporting to act as agent for the county of Liberty under the above orders, on August 17, 1881, executed a deed to Walter H. Allen, conveying the said ten tracts of land, patented as above found, aggregating 15,905½ acres, for a cash consideration of $26,164.54.

"IV. I find that the above-mentioned consideration of $26,164.54 was paid to W. W. Perryman by the grantee in said deed executed by said Perryman, and that five percent of said consideration (the same being the sum of $1,308.22) was retained by said Perryman for himself, and that he kept and held said amount in his own right and applied same to his own use and benefit.

"V. I find that on November 14, 1881, the Commissioners' Court of Liberty County made and entered on its minutes the following order: 'Whereas, it appears from the report of the county judge that he has in his hands the sum of $24,843.32 from the sale of school lands; it is ordered by the court that the county judge deposit one-third of said amount with T. W. House of Houston, one-third with City Bank of Houston and one-third [with] the First National Bank of Houston, to the credit of the school fund of Liberty County.'

"VI. I find that the county judge of Liberty County deposited the said sum of $24,843.32 in the three Houston banks mentioned above, and that thereafter, to wit, on June 29, 1882, the Commissioners' Court of Liberty County, by order entered on its minutes, directed that said sum of money be transferred from said banks at Houston and deposited with Ball, Hutchings & Company, bankers, of Galveston, Texas; and further directed that said Ball, Hutchings & Company invest said money in bonds of the State of Texas.

"VII. I find that in pursuance of said order of the Commissioners' Court last above mentioned said Ball, Hutchings & Company did invest said sum of money in bonds as directed, holding said bonds on deposit, and paid the interest collected thereon to the county treasurer of Liberty County, Texas, and the same was by him placed to the credit of the available school fund of Liberty County.

"VIII. I find that W. W. Perryman, who executed the deed to Walter H. Allen dated August 17, 1881, as above mentioned, was county judge of Liberty County during all of the years 1881 and 1882, and that he died prior to the institution of this suit.

"IX. I find that during the year 1885, in accordance with orders of the Commissioners' Court of Liberty County, said Ball, Hutchings & Company sold a portion of said bonds which were on deposit with them, and the proceeds of such sale were invested in Liberty County jail bonds, the amount so invested being at first $6,500, and later an additional sum of $3,500. And I further find that these bonds in the sum of $10,000 were placed on deposit with Ball, Hutchings & Company of Galveston for safe keeping; and I further find that in-

terest on these bonds was paid to the county treasurer of Liberty County for a number of years thereafter, and the sums so paid were placed to the credit of the available school fund; but the evidence does not disclose exactly the amount so paid nor accurately the number of years such interest was paid.

"X. I find that on September 5, 1899, the Commissioners' Court of Liberty County made and entered on its minutes the following order: 'It is ordered by the court that the $12,100 of State of Texas five-percent bonds belonging to the permanent school fund of Liberty County, and now in the hands of the treasurer of Liberty County, be sold by M. D. Rayburn, county judge of Liberty County, and delivered by him to the purchaser thereof. The proceeds to be paid over by him to the county treasurer of Liberty County to be hereafter invested as this court may decide.'

"And I further find that on the same date said court made and entered on its minutes this order, to wit: 'It is ordered that the proceeds of the sale of $12,100 and the $500 Refugio County bonds belonging to the school fund of Liberty County be invested in the five and one-half percent interest-bearing script of Liberty County, and the money used in paying the back indebtedness of Liberty County. Also that five and one-half percent interest-bearing script be issued in the sum of $6,500 to the permanent school fund of Liberty County in lieu of $1,500 illegally spent by the county by mistake and $5,000 of jail bonds which were void for want of proper authority in their issuance, in July and December, 1885.'

"XI. I find that W. W. Perryman, who executed the deed to Walter H. Allen on August 17, 1881, for the lands in controversy (as found in paragraph 1 of these findings), made no written report of that sale to the Commissioners' Court of Liberty County, and that said sale was never expressly approved or ratified by said court.

"XII. I find that the defendants David L. Gallup and the East Texas Oil Company claim title by mesne conveyance to the land in controversy through and under the deed from W. W. Perryman to Walter H. Allen, dated August 17, 1881, referred to in the first paragraph of these findings of fact, and that said defendants now have and hold only such title as became vested in said Allen by virtue of said deed; and I further find that the defendant David L. Gallup paid in cash to Augustus F. Kountze a valuable consideration for the land in controversy when he bought same from said Kountze.

"XIII. I find that 40,000,000 feet of timber have been cut from those tracts of land in controversy located in the counties of Polk and Tyler, under contract with parties claiming title to said lands under and by virtue of said deed above mentioned from W. W. Perryman to Walter H. Allen, dated August 17, 1881, and that said parties were paid for said timber the sum of $1.25 per thousand feet. And I further find that the present market value of said timber would be $2.00 per thousand feet."

*Conclusions of law.*—"I. I conclude that the Commissioners' Court of Liberty County had no power to delegate to W. W. Perryman the authority to sell the lands in controversy, as said court attempted to

do in its order made and entered on July 1, 1881, as set out in above findings of fact, and therefore said order was and is null and void.

"II. I conclude that the deed executed by W. W. Perryman to Walter H. Allen on August 17, 1881, conveying the lands in controversy, as set out in above findings of fact, is null and void, and that no title whatever passed thereby, the said Perryman being wholly without authority to execute the same; and I further conclude that neither the Commissioners' Court of Liberty County nor any act of said county has ever expressly ratified or confirmed said void sale.

"III. I conclude that the title to the lands in controversy is vested in fee simple in the county of Liberty for the public schools of said county in accordance with the Constitution and laws of the State of Texas, and that therefore judgment should be rendered for said county of Liberty, plaintiff in this cause."

*Opinion.*—The first, second and third assignments of error are directed against the first and second conclusions of law of the trial court. Every one of them is advanced as a proposition in itself. Under the three assignments this additional proposition is advanced: "The order of the Commissioners' Court of July 1, 1881, was within the power of said court and in all respects valid, and the sale and conveyance made thereunder by W. W. Perryman to Walter H. Allen was valid and effectual to convey, and did convey, to said Allen the land in controversy."

Article 7, section 6 of the Constitution as it stood in 1881, so far as material to the question involved, is as follows: "All lands heretofore or hereafter granted to the several counties of this State for education or schools are of right the property of said counties respectively to which they were granted, and title thereto is vested in said counties. . . . Each county may sell or dispose of its land, in whole or in part, in manner to be provided by the Commissioners' Court of the county. . . . Said lands and the proceeds thereof when sold shall be held by the counties alone as a trust for the benefit of the public schools therein; said proceeds to be invested in bonds of the State of Texas or of the United States, and only the interest thereon to be used and expended annually."

Article 5, section 18 of the Constitution of 1876, provides that "The County Commissioners, . . . with the county judge as presiding officer, shall compose the County Commissioners' Court, which shall exercise such powers and jurisdiction over all county business as is conferred by the Constitution or the laws of the State or as may hereafter be prescribed."

After the adoption of the Constitution of 1876 and prior to 1881, the Legislature enacted the following provisions, which appear in the present Revised Statutes as articles 1550 and 4271, and, so far as material, are as follows:

Article 1550: "It shall be the duty of the Commissioners' Court to provide for the protection, preservation and disposition of all lands heretofore granted, or that may hereafter be granted to the county for education or schools."

Article 4271: "Each county may sell or dispose of the lands

granted to it for educational purposes in such manner as may be provided by the Commissioners' Court of such county; and the proceeds of any such sale shall be invested in bonds of the State of Texas, or of the United States, and held by such county alone as a trust for the benefit of public free schools therein, only the interest thereon to be used and expended annually."

It is clearly seen from these constitutional provisions that the land in controversy, it having been granted by the State to Liberty County for educational purposes, was the property of such county in whom the title vested; that the county was authorized to sell or dispose of the land, in whole or in part, in the manner to be provided by its Commissioners' Court; that the proceeds of sale should be invested in certain securities and held by the county alone as a trust for the benefit of public free schools therein; that only the interest thereon should be used and expended annually. In other words, Liberty County was of right the owner of the land, and empowered to sell the same in the manner provided by its Commissioners' Court. The *manner* of sale was not prescribed by law, but it was left to be *provided* by the County Commissioners' Court.

In this case the County Commissioners' Court of Liberty County did provide or attempted to provide for the sale of the land in controversy, as is shown by the order of said court copied in the trial court's second conclusion of fact.

Was this order, under the law as interpreted by the Supreme Court, sufficient, in the *manner* it provided for the sale being made, to empower the county to sell its land? The order is predicated upon the express judgment of the Commissioners' Court that it was, when made, for the interest of Liberty County that its school lands described therein be placed upon the market for sale and the proceeds thereof invested as provided by law; it appointed W. W. Perryman agent of the county with full power to sell the land, either at private or public sale, as in his judgment he might deem best for the interest of the county, and to make good and sufficient title to the purchasers, and provided that the lands nor any part thereof should be sold for a less price than $1.50 per acre.

In the case of Logan v. Stephens County, 98 Texas, 283, 83 S. W., 365, a case very similar to this, it is said by the Supreme Court: "The Constitution, as before quoted, gives to the Commissioners' Court of each county ample powers to sell the school lands of the county, but it in terms declares that the counties hold 'the said land and proceeds thereof, when sold, . . . alone as a trust for the benefit of the public schools therein.' The county was in the attitude of trustee for the benefit of the public school fund in the handling and management of the land, and we must construe the power given to the Commissioners' Court in accordance with the rules which govern trustees in the discharge of their duties." And that "with reference to the constitutional provision now under consideration, the act of selling is necessarily the direct act of the county through its Commissioners' Court, which is empowered to transact all its business," and that a sale by an agent would not be a sale by the county. Under the decision quoted from, the provision in article 7, section 6 of the

Constitution, "that such county may sell or dispose of its lands . . . in manner to be provided by the Commissioners' Court of the county," must be read and construed in connection with that part of article 5, section 18, which provides that such "court shall exercise such powers and jurisdiction over all county business as is conferred by the Constitution and laws of the State," and when so read, must be construed to mean that the *sale* of school lands, being the *business* of the county to which they belong, can only be made by the county through its Commissioners' Court as its agent.

That the sale under which the appellants claim the land was by Perryman as its agent, and not by the county of Liberty, is apparent from the order of his appointment, as well as from the deed made in its pursuance. By the order he is given *full power* to sell the land. To hold such order valid would be to say that the County Commissioners' Court could divest itself of a power given it alone by the Constitution and delegate it to another, contrary to the principle *delegatus non potest delegare.*

The case in hand, as well as the one we have quoted from, is distinguishable from Matagorda County v. Casey, 49 Texas Civ. App., 35, in that the terms of sale in that case were fixed and an agent was only appointed to make the sales on the specific terms prescribed by the Commissioners' Court. No power or discretion delegated by the Constitution and laws of the State to that court was divested by its order appointing Donald & Cobb its agents nor lodged in them. But such power and discretion had been fully exercised and discharged by the court, and they were only empowered to carry into effect sales the terms of which had been definitely fixed by the court itself. Their authority was purely ministerial, nothing being left to their judgment or discretion. We therefore think the question stated, involved in the assignments, should receive a negative answer.

The fourth, fifth, sixth and seventh assignments of error, presented as original propositions, are as follows:

4. "The court erred in its third conclusion of law, which is as follows: 'I conclude that the title to the lands in controversy is vested in fee simple in the county of Liberty for the public schools of said county, in accordance with the Constitution and laws of the State of Texas, and therefore judgment should be rendered for said county of liberty, plaintiff in this cause,' for that the undisputed and uncontradicted evidence in this case shows that the title to the lands in controversy in this case is vested in said David L. Gallup and East Texas Oil Company, because the sale made by W. W. Perryman, acting for and on behalf of the Commissioners' Court of Liberty County, Texas, to Walter H. Allen, has been ratified and confirmed by the plaintiff in this case and by the County Commissioners' Court of Liberty County, Texas, and said plaintiff has continuously retained and used the proceeds and benefits of said sale for a period of twenty-five years before the filing of this suit, and has thereby ratified and confirmed the same, and is estopped to deny the validity thereof."

5. "The court erred in rendering judgment herein in favor of the plaintiff for the land in controversy herein against these defendants, and in failing and refusing to render judgment for said land

in favor of these defendants against said plaintiff, for that the undisputed and uncontradicted evidence herein shows that these defendants held under Walter H. Allen, to whom the land in controversy was conveyed on August .17, 1881, by W. W. Perryman, acting for the plaintiff herein, and that the said plaintiff, with full knowledge of all the facts connected with said conveyance and sale, and the said Commissioners' Court of Liberty County, with full knowledge of all of the facts connected with said sale, accepted the benefits arising from said sale, and has continuously used and enjoyed the said benefits and proceeds of said sale for a period of twenty-five years before the filing of this suit, and has never tendered a return thereof to said Allen or his assigns, and the plaintiff is estopped from questioning and attacking the validity of said sale made to said Allen."

6. "The court erred in rendering judgment in this cause for the land in controversy in favor of the plaintiff against these defendants, and in failing and refusing to render judgment in favor of these defendants against said plaintiff for said land, for that the undisputed and uncontradicted evidence shows that these defendants hold the title to said land under and through Walter H. Allen, to whom said lands were conveyed by W. W. Perryman, acting for the plaintiff herein, in 1881, and that since said time the county of Liberty, plaintiff herein, and the Commissioners' Court thereof has continuously retained and used the consideration paid by said Allen, and have never tendered a return of said consideration to said Allen or his assigns, and that by receiving and using the benefits of said sale the said plaintiff herein has ratified and confirmed the said sale."

7. "The court erred in rendering judgment herein in favor of the plaintiff for the land in controversy against these defendants, and in failing and refusing to render judgment for said land in favor of these defendants against said plaintiff, for that the undisputed and uncontradicted evidence shows that these defendants hold under Walter H. Allen, to whom the land in controversy was conveyed on August 17, 1881, by W. W. Perryman, acting for the plaintiff herein, and that the said plaintiff accepted the benefits arising from said sale, and has continuously used and enjoyed the said benefits for a period of twenty-six years before the filing of this suit, and has never tendered a return thereof to said Allen or his assigns, and that said plaintiff is estopped from questioning and denying the validity of the said sale made to said Allen."

And under the assignments are asserted these additional propositions:

1. "If the order of the Commissioners' Court of July 1, 1881, was not within the power of the court and in all respects valid, the sale and conveyance made thereunder by Perryman, acting for and on behalf of Liberty County, to Allen, has been ratified and confirmed by said county and the Commissioners' Court thereof, and is in all respects valid and binding on said county."

2. "The County Commissioners' Court of Liberty County was vested with authority to make a sale of the land in question, being a portion of the school lands donated to said county by the State of Texas. If it be admitted that the order entered by said court, direct-

ing W. W. Perryman to sell the lands, was beyond the authority of the Commissioners' Court, yet as the undisputed and uncontradicted evidence in this case shows that Perryman, who purported to act as the agent of Liberty County, reported said sale to the Commissioners' Court, and that the Commissioners' Court of Liberty County, well knowing all of the facts connected with said sale, received the proceeds and benefits arising therefrom, and retained and used said proceeds and benefits, well knowing all the facts, for a period of twenty-six years before the filing of this suit, and has never tendered them to the purchaser from Perryman or his assigns, the county of Liberty has thereby ratified and confirmed the sale so made to Perryman, and as appellants held the title of the purchasers from Perryman the county of Liberty can not now disaffirm said sale and recover the land involved therein, and it was error for the court below to render judgment in favor of the county."

3. "Accepting and retaining the benefits arising from a conveyance by which one was not bound or which was voidable as to him with knowledge of the facts is a ratification of such conveyance. This applies as well to municipal corporations and trustees as to any other class of persons."

"The County Commissioners' Court of Liberty County and Liberty County itself having full knowledge of all the facts and circumstances connected with the sale made to Allen by Perryman purporting to act as the agent for Liberty County and its Commissioners' Court, and having received the benefits arising from said sale, and retained and used said benefits for over twenty-six years after said sale was made, and having taken no steps during that time to disaffirm said sale, and having given no indication of any intention to so disaffirm said sale, and having allowed innocent parties, such as appellants herein, to purchase the title which passed from Allen, for valuable consideration, are estopped to deny the validity of said sale, and are estopped from claiming the title to the lands in question against appellants, and the court, therefore, erred in rendering judgment in favor of the county of Liberty and against appellants."

The principle is axiomatic that where one person executes a deed, purporting to be the act of another, without authority to do so, and the person for whom such act purports to have been done is fully apprised of all the facts connected therewith, and knowingly receives and uses the benefits derived from such sale, he thereby ratifies it, and is estopped from asserting that the person purporting to act as his agent was without authority to make it. As is said, "Ratification is the election by a person, and the expression of such election by words or conduct, to accept an act or contract previously done or entered into in his behalf by another who had at the time no authority to do the act or make the contract on his behalf. If certain acts have been performed or contracts made on behalf of another without his authority, he has, when he obtains knowledge thereof, an election either to accept or repudiate such acts or contracts. If he accepts them, his acceptance is a ratification of the previously unauthorized acts or contract, and makes them as binding upon him from the time they were performed as if they had been authorized in the first place." (Clark

& Skyles on Agency, sec. 98.) This principle applies to a municipal corporation the same as to an individual as to contracts which have been unauthorizedly entered into on its behalf, if it could have originally authorized such acts or contracts. If there is legal authority for the contract, though it be illegal because of some irregularity or informality in the manner or time of its execution, and therefore incapable of enforcement, it may be ratified by an acceptance of the benefits of the contract by the corporation. But if there be no legal authority for the contract, that authority can not be created through the application of any doctrine or principle of estoppel, acquiescence or ratification. (Clark & Skyles on Agency, sec. 121; Abbott on Municipal Corporations, secs. 279, 280; Smith's Modern Law of Municipal Corporations, secs. 258, 259.)

The case before us does not disclose a sale beyond the scope and powers of Liberty County or of its Commissioners' Court, entrusted by the Constitution and laws of the State with its business; but one that the county is expressly authorized to make "in the manner to be provided by the Commissioners' Court of the county." The manner provided by the court was simply illegal. That is all. If the manner it provided had been legal, the sale would have been. Therefore, we think the sale, though illegal, under which appellants claim the land in controversy, was such as could be ratified by the county, and that the facts found by the trial court show a full and complete ratification of it. Wherefore, the judgment of the District Court, as against these appellants, is reversed, and judgment is here rendered against the appellee in their favor for the land in controversy.

### ON MOTION FOR REHEARING.

The land sued for was, by virtue of article 7, section 6 of the Constitution, expressly granted by the State to Liberty County for "education or schools," and was "of right the property of said county," in whom the title by virtue of the grant vested. The same constitutional provision which authorized the grant empowered the county to "sell or dispose of the land in manner to be provided by the Commissioners' Court of the county." Article 4271, Revised Statutes of 1895, added nothing to the county's power to sell or dispose of such lands, nor could it divest the county of such *power* conferred by the Constitution. The land was donated and dedicated for education or schools. To accomplish the purpose of the grant it was essential that it should be sold or some other disposition be made of it. This disposition could only be made by the county in the *manner* to be provided by the Commissioners' Court. In other words, it was for the county to dispose of it, and the commissioners to prescribe the manner of its disposition. As the land was the county's, its sale or disposition was "county business conferred by the Constitution of the State," and the power of the county to sell could only be *exercised* by the County Commissioners' Court in such a manner as it might prescribe. But it could prescribe no manner of selling or disposing of the land which would take from it and vest in another the discretionary power necessary to be exercised in making a sale, as is held by the Supreme Court in Logan v.

Stephens County. When the court acts itself in the sale of county school lands, it can exercise to its fullest extent the power conferred upon it as a trustee by the Constitution. But when it attempts to act through another as its agent, it can delegate none of its discretionary powers. For, under the rules governing trustees, the court itself must exercise the discretionary powers entrusted to it by the Constitution. (Meerscheidt v. Gardner, 48 Texas Civ. App., 579.) The rule that a trustee, who is authorized to sell property under an instrument which does not contain any special direction as to the mode or time of sale, must exercise his own judgment in determining the time and mode of sale and whether the amount offered shall be accepted or not, can not, with respect to any of these matters, delegate the exercise of his judgment or discretion to another, is the one applied by the Supreme Court in the Stephens County case. But, while the trustee may not delegate the exercise of the judgment and discretion reposed in him, he may employ agents to a limited extent to aid him in the execution of the powers intrusted to him. Still their employment should be restricted to carrying out what he has already determined upon. For the judgment and discretion must be that of the trustee, though, in accomplishing what his judgment has previously approved, he may call others to his aid. (Gillespie v. Smith, 29 Ill., 473, 81 Am. Dec., 328; Kennedy v. Dunn, 58 Cal., 339; Johns v. Sargeant, 45 Miss.; 332.) Herein lies the distinction between the cases of Logan v. Stephens County, 98 Texas, 283, and Matagorda County v. Casey, 49 Texas Civ. App., 35. In the one case the County Commissioners' Court ordered that E. L. Walker be appointed commissioner for the sale of the Stephens County school lands and to make title to the same as such commissioner, which was clearly an attempt on the part of the court to delegate to another the judgment and discretion, the exercise of which was intrusted by the Constitution to it alone. In the other case the order was that Donald & Cobb be appointed as agents of the county of Matagorda for the management and sale of its school lands, and empowered them as such agents to sell and convey the lands at the prices specifically set forth in the order. From the order, it is apparent that no judgment or discretion of the court was attempted to be delegated to Donald & Cobb; but that they were simply appointed for the purpose of carrying out what the court, in the exercise of its judgment and discretion, had already determined upon. Hence the sale in the first case was invalid and in the other it was all right.

While the surrender of its judgment and discretion and its attempted delegation by the County Commissioners' Court of Liberty County to Perryman was not as complete in the case at bar as it was in the Stephens County case, it seems to us that enough was surrendered and sought to be delegated to him to render the sale made by him, through which appellants deraign title, invalid when tested by the principles before enunciated.

This brings us to the consideration of the question, whether the sale was susceptible of ratification. It is stoutly asserted and vigorously argued in this motion that we erred in deciding this question

in the affirmative in our original opinion, and that we should, upon reconsideration, decide that the sale could not be ratified.

There are certain contracts which are incapable of ratification, or, more properly speaking, there are certain transactions partaking of the color of contracts, which are not and never can become contracts according to the legal conception of the term. Such transactions as are directly or impliedly prohibited by the Constitution or statute, such as are clearly against public policy, or such as, were it not perforce of a statute, would be unauthorized, which do not comply in manner and form of their execution with the requirements of the statute authorizing them, are in no sense of the term contracts, and never can, by ratification, acquiescence or any act of the parties, become contracts such as can be enforced through the medium of the courts.

To illustrate: A, in consideration of a promise made to him by B to pay him a designated sum of money upon his murdering C, commits the murder in the performance of his part of the agreement; B then refuses to pay him the sum of money according to his agreement; then A sues him, setting up the terms of the agreement, the performance of his part of the agreement, and prays judgment for the sum of money B promised to pay him for committing the felony. Any child in the land would know that such an agreement is not a contract and the reason why it is not and could not be; that, though on account of the murder B accepted pecuniary benefits arising from it, the transaction was such that it could not, in the sense of the law, be ratified by any subsequent act; that if the law were enforced, instead of a judgment for money, B would get one for a hangman's noose entitling him to dangle from a gallows by the side of A, his partner in the crime. That such a suit has never been brought is not because no such agreement has never been made, but on account of the knowledge of those who have sunk to the lowest depths of human depravity, of the law.

Take another case, of a character which has frequently arisen and been adjudicated, for illustration of the principle: A, knowing that B desires to rent his house to be used for an illegal purpose—such as for gambling, a house of prostitution, storing smuggled goods, or secreting stolen property—rents it to him for the purpose of his carrying on such illegal business therein; B takes possession of the building under the lease and uses it during the term for the purpose of carrying on such unlawful business; B has not paid but refuses to pay A the rental agreed upon, and the latter sues him for it. B pleads in answer the illegality of the agreement, to which A, by his supplemental petition replies: "You ratified the agreement by entering into possession of my house thereunder and occupying it during the entire term of the lease." The reply has no force, for the law pronounces the agreement illegal from its inception, because the purpose for which it was entered into was contrary to the statute as well as against public policy, and incapable of ratification. Such an agreement is so tainted by the putrefaction of immorality as to render it an absolute nullity, incapable of ratification in any manner.

It is not insisted in appellee's motion for rehearing that the case under consideration is of the class we have just illustrated, and we

have offered the illustrations only for the purpose of demonstrating the principle that a contract which is in itself illegal is not susceptible of ratification.

It can not be said that the sale by a county of her public school lands is in itself illegal, for such a sale is expressly authorized by the Constitution as well as by statute; nor can it be held against public policy for a county to do that which it is fully authorized by the Constitution and laws of the State to do. On the contrary, it would seem that it was the duty of Liberty County to sell such of her lands at the time her Commissioners' Court attempted to do so by its order of July 1, 1881, appointing W. W. Perryman the agent of the county to sell such lands. For it, at the same time, declared it to be the judgment of the court that it was for the interest of the county that all its school la᾽ ds situated in the counties of Polk, Tyler and Hardin be placed on the market for sale, and the proceeds thereof invested as provided by law. In this there was an exercise of the discretion and judgment of the court, which was, no doubt, properly determined. For the children within the scholastic age then residing in Liberty County were as much entitled to the benefaction provided by the State as the children who may reside within its limits a hundred years from now. In this view it would seem that the county had not only the right to place the lands on the market for sale at that time, but that it was its duty to do so, in order that those who were entitled to the interest on the proceeds of the sale, invested as a permanent school fund, could get the benefit of it, as was intended by the State when the donation of the land to the county was made. It was certainly not contemplated by "The Fathers" that the children of their generation should be deprived of the fruits of the State's bounty in order that in the distant future a better price might be obtained and a larger permanent school fund realized for the children of future generations. It must have been contemplated that the children of those who "let down the gap and trod down the first grass, fought back the Indians and smoothed the *trail* for others," were entitled to some benefit from the donation of lands by the State to the several counties for school purposes.

So far there was no illegality in the order of the Commissioners' Court, nor would it have been illegal for the county, by its Commissioners' Court, to have sold the land and have carried into effect a sale made by it through the agency of Perryman, or any other suitable person. Its invalidity consisted in the order's giving him "full power to sell the land either at private or public sale, as in his judgment he might deem best for the interest of the county," thus expressly delegating its powers of discretion and judgment which, as we have seen, it alone could exercise. But the sale made by him was not like the sales in those cases where the Commissioners' Courts conveyed county school lands to parties in consideration of their locating and surveying such lands, which were invalid, because contrary to the Constitution and statute which provide that the proceeds of such lands, when sold, "shall be held by said counties alone as a trust fund for the benefit of the schools therein." Inasmuch as such sales were in consideration of services performed, the counties received nothing

that could be held as a trust fund for the benefit of the schools. The trust expressly imposed by the Constitution upon the county was violated and the source from which the trust fund was to flow was destroyed by the very power intrusted by the law with its preservation. Hence, such proceedings of the Commissioners' Court were absolutely void and incapable of ever being ratified in any way by any power in this world.

This case is not analogous in principle to Nichols v. State, 11 Texas Civ. App., 327. In that case the plaintiff's demand against the State for payment for extra work upon the building could not be enforced because of the inhibition contained in article 3, section 44 of the Constitution, which provides that "the Legislature shall not grant money to any individual on a claim, real or pretended, when the same shall not have been provided for by pre-existing law." As there was no such pre-existing law authorizing payment for the extra work done by Nichols on the State's building, the acceptance and occupancy of the building by the State was not a ratification of the pretended contract upon which his demand arose, and could not be, for the reason that the Legislature was by the Constitution expressly inhibited granting money on such a claim, no provision having been made by any law existing, before the claim arose, for its payment.

The cases of Noel v. City of San Antonio, 11 Texas Civ. App., 586, and National Bank v. Dallas, 73 S. W., 841, are ruled by the principle that a pretended contract by a municipal corporation, which the municipality is prohibited by the Constitution from making, is absolutely void and not susceptible of ratification. In the two cases mentioned no provision was "made to assess and annually collect a sufficient sum to pay the interest thereon, and to create a sinking fund." Therefore, the claims sued upon were in direct violation of article 11, section 5 of the Constitution, which declares that no debt shall be created by a city unless at the same time provision be made to assess and collect a sufficient sum to pay the interest thereon and create a sinking fund of at least two percent thereon. Consequently, in accordance with the principle stated, it was held, as has been done in a number of similar cases, that the contracts sued on were absolutely void and incapable of ratification. Hence it appears that there is no analogy between that class of cases and the one at bar.

Nor is there any analogy between the case in hand and that of Daniel v. Mason, 90 Texas, 240, wherein it was held by the Supreme Court that a married woman's deed to her separate property was void although her vendee had no notice of her coverture, and though she accepted from him the cash consideration, appropriated and never returned it. That decision rests upon the principle that where a contract, which could not under the common law be made, is authorized by a statute which prescribes the manner and form of its execution, must be made in conformity to the statute which authorizes it, or else it will be void. In that case a married woman undertook to convey real estate, which was her separate property, without being joined in the conveyance by her husband, which was absolutely required by article 635, Revised Statutes of 1895, which conferred the right to make the conveyance and prescribed the manner and form of its

execution. Hence the court held her deed was absolutely void and not susceptible of ratification.

In the case of Logan v. Stephens County, *supra*, there was no ratification of the sale attempted to be made by Walker under his appointment as commissioner for the sale of the county's school lands, nor was the question of ratification involved.

We have thus classified and analyzed the cases upon which appellee relies to show that the sale of the lands in controversy was void and incapable of subsequent ratification, disclosed the principle upon which each class was decided, distinguished the case in hand from each class of such cases, and demonstrated that the principle by which it is ruled does not obtain and is inapplicable to the case under consideration.

The appellee in its motion makes this quotation from Dillon on Municipal Corporations: "A municipal corporation may ratify the unauthorized acts and contracts of its agents or officers which are within the scope of the corporate powers, but not otherwise. . . . But a subsequent ratification can not make valid an unlawful act without the scope of corporate authority. An absolute excess of authority by the officers of the corporation, in violation of law, can not be upheld, and, when the officers of such a body fail to pursue the requirements of a statutory enactment under which they are acting, the corporation is not bound. In such a case the statute must be strictly followed. And a person who deals with a municipal body is obliged to see that its charter has been fully complied with. When this is not done, no subsequent act of the corporation can make an *ultra vires* contract effective." The argument its counsel bases upon the principle begs the question in assuming that the sale of the land was not within the corporate powers of Liberty County, from which premise they reach the conclusion that it was *ultra vires,* and therefore incapable of subsequent ratification. Whether such premise is sound or not is the very question to be determined. If it is sound, the conclusion inevitably follows that the sale in question is not susceptible of ratification; but if unsound, the conclusion fails with the premise. In the latter event some other premise must be formed as a basis for such conclusion. In the quotation the principle is clearly and unequivocally enunciated that "A municipal corporation may ratify the unauthorized acts and contracts of its agents or officers which are *within the scope* of its corporate powers." We have seen that it was within the scope of the corporate powers of Liberty County to sell its school lands, such power being expressly granted by the Constitution and laws of the State; that the invalidity of the sale did not rest upon the principle of *ultra vires;* but that the vice lay in the manner in which the county exercised its corporate power to sell. As is said in Abbott on Municipal Corporations, sec. 279: "A contract may, because of some irregularity in the manner or time of its execution, be illegal, because defective, and, therefore, incapable of enforcement. Such a contract the authorities hold may be ratified either by an acceptance of the contract by the public corporation . . . or by acquiescence in existing conditions." See also the authorities cited in note 837, pp. 623, 624, vol. 1, of the work just quoted from.

There is no mandatory provision prescribed by either the Constitu-

tion or laws of the State, as in the case of the conveyance by a married woman for the conveyance of her separate real estate, for the sale and conveyance by a county of her county school lands.   But, as we have seen, it is left to the County Commissioners' Court to provide. the manner of its sale and disposition.   It is a general rule that, "If the invalid contract was one which the corporation could make, and is not void because not in compliance with a mandatory provision of the law, it may be ratified."   (Supervisors v. Schenck, 5 Wall. (U. S.), 772; State v. Cowgill Milling Co., 156 Mo., 620, 57 S. W., 1008; Bell v. Waynesboro, 195 Pa. St., 299, 45 Atl., 930.)   Hence, we conclude that the sale of the land evidenced by the deed from W. W. Perryman, under which appellants claim, though invalid, was not void, and was, therefore, susceptible of ratification.

We omitted to express our opinion in the proper place upon the effect of Perryman's retaining five percent of the proceeds of the sale as his commissions for effecting the sale.   It is that it does not affect the question of ratification.   The commission was allowed by a different order of the Commissioners' Court from that which sought to empower Perryman to effect the sale of the land.   The purchaser was not, therefore, charged with notice of it when he paid the purchase money, which was more than the minimum price for which the Commissioners' Court, as is shown by its order appointing him as agent of the county to sell was willing for it to be sold.   The court's allowing Perryman to retain the five percent was, in our opinion, simply a diversion of the money from the fund to which it belonged to the general fund of the county.   Thereby the County Commissioners' Court created a claim by the school fund on the general county fund for the amount of money paid Perryman, and, therefore, the Commissioners' Court should restore the amount thus diverted to the school fund by taking it from the general fund to which it was diverted.

The sale of the land being susceptible of ratification, the next question is, Do the facts found by the trial court show its ratification by the county?

As is said in our original opinion:   "The principle is axiomatic that where one person executes a deed, purporting to be the act of another, without authority to do so, and the person for whom such act purports to have been done is fully apprised of all the facts connected therewith, and knowingly receives and uses the benefits derived from such sale, he thereby ratifies it and is estopped from asserting that the person purporting to act as his agent was without authority to make it.   .   .   .   'Ratification is the election by a person, and the expression of such election by words or conduct, to accept an act or contract previously done or entered into in his behalf by another who- had at the time no authority to do the act or make the contract on his behalf.   If certain acts have been performed, or contracts made on behalf of another without his authority, he has, when he obtains knowledge thereof, an election either to accept or repudiate such acts or contracts.   If he accepts them, his acceptance is a ratification of the previously unauthorized acts or contracts, and makes them as binding upon him from the time they were performed

Vol. LVII Civil—13.

as if they had been authorized in the first place.' Clark & Skyles on Agency, section 98."

Inasmuch as the evidence shows undisputably the presence of all the facts essential to a complete ratification, we think it is self-demonstrative.  If a man, who had knowingly received from another the purchase money for an unauthorized sale of his land, invested the money in interest-bearing securities, collected and used the interest on the investment for over twenty years, should sue the purchaser to recover his property upon the ground that he never authorized the sale, his action would unquestionably be defeated by proof of such acts of ratification.  To our minds it is equally clear that Liberty County can not, for the same reason, recover in this action.  The education of the children of Texas does not demand the sacrifice of public integrity.  Such a sacrifice is too great for any purpose.  No individual can afford to make it, and we do not think that any county of the great State of Texas is, or should be, allowed to make it.  "Robbing Peter to pay Paul" has never been regarded as orthodox religion by any church or as sound morals by any man.  And it may be doubted whether Peter himself, with all his Christian forbearance, approved such conduct.  The motion is overruled.

*Reversed and rendered.*

Writ of error refused.