# DECEMBER, 1904.

### E. B. LOGAN ET AL. v. STEPHENS COUNTY.

No. 1364. Decided December 1, 1904.

**1.—Commissioners Court—Sale of County School Land—Delegation of Authority.**

The power conferred upon the commissioners court by section 6, article 7, of the Constitution to sell county school land "in manner to be provided" by such court, did not authorize the court to delegate to an agent any part of the discretion vested in it by the Constitution. (Pp. 290, 291.)

**2.—Same—Fixing Terms of Sale.**

An order of the commissioners court giving to an agent power to sell and convey its county school lands, if considered as having fixed the terms of sale as at cash and for the market price, still, in leaving the question of market price to be determined by the agent transferred to him a discretion vested by law in the court and which iit could not confer on another. (P. 292.)

**3.—Same—Fact Case.**

S., who claimed a league of county school land by conveyance from one asserting a right to it by contract with the county for a locative interest, agreed to sell it for $3000 to I., who was to buy it only in case the county would also convey it to him; being refused a deed by the county commissioners, I. took conveyance, for the consideration of $3000, from an agent empowered by order of the commissioners court to sell and convey its county school land, and paid the sum to such agent, who paid it to S., who was then county treasurer; S. did not report or account for the money to the county, nor did the agent report to it the sale; I. then sold the land to innocent purchasers. Held, that the order authorizing the agent to sell and convey the land was void, as being a delegation of a discretion vested by law in the court, and not transferrable, and that the county could recover the land from the vendees of I. (Pp. 289-293.)

Error to the Court of Civil Appeals for the Second District, in an appeal from Callahan County.

Stephens County sued Logan and others for the recovery of land, and recovered. Defendants appealed and on affirmance obtained writ of error.

*W. H. Jenkins* and *D. A. Kelley,* for plaintiffs in error.—The judgment of the court is contrary to the law and evidence for the reason that the evidence shows that Stephens County had parted with the title to said land by sale made by E. L. Walker to C. W. Israel, the said Walker acting in such capacity as commissioner for the sale of Stephens County school lands located in Crosby County, Texas, under and by virtue of an order, which was a sufficient compliance with the Constitution and law authorizing such land to be sold in such manner as. may be required by the commissioners court. The power of the commissioners court to act is derived from the Constitution, article 7, section 6, which reads as follows: Each county may sell or dispose of its land in whole or in part in manner to be provided by the commissioners court of the county. See also Revised Statutes, article 794, which authorizes the commissioners court to appoint a commissioner to sell and dispose of real estate belonging to the county. See also Rev. Stats., art. 4271. It was the duty of the commissioners court to select such agent as might be necessary to assist them in discharge of their functions. Gano v. Palo Pinto County, 71 Texas, 103; McCord v. Pike, 2 Am. St. Rep., 85, 121 Ill., 288. Statutes directing the mode of proceedings by public officers are deemed advisory, and strict compliance with their detailed provisions is not indispensable to the validity of the proceedings themselves: Endlich, Inter. Stat., sec. 437. Often the prescriptions of a statute relate to the performance of a public duty; and to affect with invalidity acts done in neglect of them would work serious general inconvenience or injustice to persons who have no control over those intrusted

with the duty without promoting the essential aims of the Legislature. They seem to be generally understood as mere instructions for the guidance of those on whom the duty is imposed and are directory only: Endlich, Inter. Stat., sec. 436; 1 Dillon, Mun. Corp., sec. 449. The commissioners court is clothed with such powers as are necessarily implied to enable it to carry out and accomplish the objects and purposes of its creation: 7 Am. and Eng. Enc. of Law, 2 ed., 987, note 2. The court may employ an agent to negotiate bonds for the county. Nolan County v. Simpson, 74 Texas, 218; Cushman v. Carver County, 19 Minn., 295. In Riley v. Pool, 5 Texas Civ. App., 347, a deed was sustained which had been made by one Henderson acting under power from the commissioners court to sell the town lots at Canton, leaving the manner and mode of sale to his discretion. The acts of public officers are to be presumed to have been done in the proper manner and in the exercise of legitimate power unless the contrary is shown. Wooters v. Hall, 61 Texas, 16.

The evidence shows that these appellants hold title to the land in controversy under Grant and Fuller, who were innocent purchasers for value and without notice of any defects, if any, in the title to said land that may have existed under Israel's purchase from E. L. Walker as land commissioner of Stephens County. In Patty v. Middleton, 82 Texas, 591, the doctrine is laid down that the question of innocent bona fide purchaser is not one of real beneficial ownership, or of superior right, but of apparent ownership, evidenced as the law requires ownership to be. If a vendor have such written evidence of his title to the land to be sold as under the laws of this State confers on him an estate in fee, nothing further appearing, then it must be held in reference to the matter under consideration that he has not only title, but also legal title, notwithstanding he may have, as between himself and others, no beneficial interest whatever. Protection is given to a bona fide purchaser on the ground that it would be unjust to deprive him of property which he has purchased from another holding all the evidences of right necessary under the law to show that he is a true owner of the thing purchased. Grant and Fuller being innocent purchasers for value and without notice, are not affected by any suspicion that may be cast by the evidence upon Isarel. Martin v. Robinson, 67 Texas, 381; Holmes v. Buckner, 67 Texas, 112; Hill v. Moore, 62 Texas, 613; Cook v. Moore, 39 Texas, 260; Poor v. Boyce, 12 Texas, 449; Barnes v. Hardeman, 15 Texas, 366; George v. Watson, 19 Texas, 369; Johnson v. Newman, 43 Texas, 641. Even the purchaser of land from a legatee under a will duly admitted to probate gets good title, though the will be subsequently annulled as a forgery. Steele v. Renn, 50 Texas, 481. The deed from Israel to Grant and Fuller purports to sell and convey the land itself, and not the chance of a title, and hence they could not be affected with notice that would attach to a quitclaim deed. Harrison v. Boring, 44 Texas, 262; Taylor v. Harrison, 47 Texas, 461; Richardson v. Levi, 67 Texas, 364; Garrett v. Christopher, 74 Texas, 454.

One about to purchase property is not bound to inquire further than the proper records, and may rely on what they recite. Eylar v. Eylar, 60 Texas, 320. During the course of the trial, when it was shown that Grant and Fuller (under whom appellants claim) had purchased the land and paid for the same, the burden then shifted to the county to show that they had notice of the fraud, if any, that may have been attached to Israel's purchase. Le Page v. Slade, 79 Texas, 473; Sanger v. Colbert, 84 Texas, 668; Cleveland v. Butts, 35 S. W. Rep., 804.

As these appellants occupy the position of innocent purchasers (as hereinbefore indicated), they are entitled to recover the land for the reason that the order of the Commissioners Court of Stephens County made in May, 1883, vested in E. L. Walker the power to sell the land, and he having sold and conveyed the same for a valuable consideration to C. W. Israel, Stephens County parted with her title under such sale, which title is now held by these appellants.

The evidence shows that E. L. Walker, acting as commissioner aforesaid, sold and conveyed the land in controversy to C. W. Israel for a sufficient consideration, which consideration passed the title to Israel, and Israel having paid the purchase money to Walker, Israel got a good title to the land, which he could lawfully convey to the said Grant and Fuller even if Stephens County did not get the purchase money for the land.

The evidence shows that Israel paid the purchase money to Walker and that Walker, as such commissioner, paid the same over to J. A. Stewart, who was at that time county treasurer of Stephens County. This was sufficient to bind Stephens County under the sale and the conveyance made by Walker to Israel, even if it were true, as testified to by Stewart and others, that the county never got possession of the money and that the same was paid to Stewart individually and not as county treasurer. Stewart had no right to receive the same except as treasurer. His pretended and void individual claim affected only one-fourth of the league, or 1107 acres. When Israel paid the purchase money for the land to Walker, who had been authorized by the commissioners court to receive the same, Israel's rights were fixed and the title was vested in him with full power to convey to Grant and Fuller, and neither Israel nor Fuller and Grant were under any obligations to see to the application of the purchase money, nor to see that the money was actually deposited in the treasury of Stephens County. The paying of the purchase money to Walker was sufficient, and even if Stephens County failed to receive the money, such fact, if it be a fact, would not impair Israel's power to convey the land to Grant and Fuller, who were innocent purchasers for value and without notice.

The evidence shows that Israel paid the purchase money to Walker and that he paid $2600 of the amount to Stewart, who was the county treasurer of Stephens County. Thereupon Walker and Stewart became liable to Stephens County upon their bonds for the amount of the purchase money for a faithful accounting for the same, and this was the law-

ful course for the county to pursue for the recovery of the purchase money, rather than wait for a period of twenty years and then sue for the recovery of the land after the same had passed into the hands of innocent purchasers for value and without notice. Rev. Stats., art. 926, requires the county treasurer to receive all money belonging to the county from whatever source derived, and to apply the same as required by law. Walker had no right to pay the money to Stewart except in his capacity as county treasurer. Nolan County v. Simpson, 74 Texas, 222; Colorado County v. Beethe, 44 Texas, 447. He and his sureties were compelled to account for the money that came into his hands, at all hazards. Coe v. Foree, 20 Texas Civ. App., 550, 50 S. W. Rep., 616.

In Lee v. Wilkins, 1 Posey U. C., 300, it is held that a party is bound by the acts of his agents where, after full information, he fails to repudiate them. In Fort Worth Publishing Co. v. Hitson, 80 Texas, 228, it was held that where a principal with a knowledge of the facts acquiesces in acts done under an assumed agency, he can not impeach such acts as being unauthorized. It is held in Shinn v. Hicks, 68 Texas, 282, that the acquiescence of a principal for a long period of time in the unauthorized acts of an agent creates presumption of ratification. And in Reese v. Medlock, 27 Texas, 124, it was stated that the assent of the principal may be presumed from acquiescence after full knowledge of the agent's actions. In Story on Agency, sec. 255 (and quoted in Garner v. Butcher, 1 Posey U. C., 440), it is stated that "long acquiescence, without objection, and even the silence of the principal, will in many cases amount to a conclusive presumption of the ratification of an unauthorized act."

The doctrine showing the extent to which the law goes in protecting an innocent purchaser for value and without notice, is laid down in numerous decisions, some of which are referred to as follows: Schneider v. Sellers, 25 Texas Civ. App., 226; Patty v. Middleton, 82 Texas, 591; Bacon v. O'Connor, 25 Texas, 225; Barnes v. Hardeman, 15 Texas, 368; Sydnor v. Robers, 13 Texas, 622; Holmes v. Buckner, 67 Texas, 112; East Texas, etc., Co. v. Graham, 60 S. W. Rep., 472; Slayton v. Singleton, 72 Texas, 213-214; Laughlin v. Tips, 8 Texas Civ. App., 653; Taylor v. Harrison, 47 Texas, 457; Frank v. Heidenheimer, 84 Texas, 644; Terry v. Cutler, 14 Texas Civ. App., 528; Crosby v. Huston, 1 Texas, 236, 237; Richardson v. Levy, 67 Texas, 367; Thompson v. Rusk, 74 S. W. Rep., 924; Harrison v. Boring, 44 Texas, 262.

*J. W. Crudgington, A. J. Power, J. D. Hopson* and *Theodore Mack,* for defendant in error.—The commissioners court of a county acts merely as a trustee for the lands granted by the State to the county for educational purposes; hence, a purchaser of such lands must examine the minutes and proceedings of the commissioners court before purchasing the land. Pulliam v. Runnels County, 79 Texas, 363; Club Land and Cattle Co. v. Dallas County, 95 Texas, 200.

Since the purchaser of county school lands is charged with notice of

the power of the agent passing title from the county, and the records of the county develop the fact that one purporting to act as commissioner of deeds had no authority to convey the lands, every subsequent purchaser is charged with notice of the vice in the purported conveyance made by the county judge. Pulliam v. Runnels County, 79 Texas, 363; Wethered v. Boon, 17 Texas, 143.

The authority granted to a county to sell or dispose of its public school lands, under the Constitution, art. 7, sec. 6, means a sale for cash or its equivalent. Since no sale of league No. 4 was authorized by the county, and no sale of such league was ever made by the county, or under its authority, and no order to make such sale appears of record in the proceedings of the Commissioners Court, the judgment of the court in this case is free from error. Pulliam v. Runnels County, 79 Texas, 370; Club Land and Cattle Co. v. Dallas County, 95 Texas, 200.

Purchasers are charged with knowledge of everything appearing on the face of their muniments of title; where any infirmity appears or there is notice of such infirmity as would put a reasonably prudent man on notice, which notice if prosecuted with reasonable diligence would lead to knowledge, one purchasing thereunder can not be deemed to be an innocent purchaser. Waggoner v. Dodson, 96 Texas, 6.

We have endeavored to demonstrate that a proper construction of the Constitution must result in a determination that the order of the Commissioners Court, under which plaintiffs in error assert title, is insufficient to authorize a conveyance, in that it did not provide for a sale of the lands, and since the facts show without dispute there was no sale by the county, the judgment of the District Court, as affirmed by the appellate court, should remain undisturbed. If the position thus taken by us be untenable, then we submit that the Commissioners Court was without power to delegate its authority and discretion to Walker. Grider v. Tally, 77 Ala., 422; Pennington v. Streight, 54 Ind., 376; State of Mississippi v. Johnson, 4 Wall., 475; Mechem on Public Officers, sec. 657; Crocker v. Cram, 21 Wend., 211; Logan v. Curry, 95 Texas, 669; Rev. Stats., art. 986m, 1550, 4036, 4271; Boydston v. Rockwall County, 86 Texas, 239; Pulliam v. Runnels County, 79 Texas, 363; Waggoner v. Wise County, 43 S. W. Rep., 836; Terrel v. McCown, 91 Texas, 231; Perry on Trusts, secs. 287, 408; Smith v. Swan, 2 Texas Civ. App., 563; Fuller v. O'Neal, 69 Texas, 349; City of Bryan v. Page, 51 Texas, 535; Lufkin v. City of Galveston, 56 Texas, 522; Palo Pinto County v. Gano, 60 Texas, 249; Gano v. Palo Pinto County, 71 Texas, 99; Russell v. Cage, 66 Texas, 428; Polly v. Hopkins, 74 Texas, 145; Platter v. Board of Commissioners, 103 Ind., 360; Brown v. O'Connell, 36 Conn., 447; State v. Kennon, 7 Ohio St., 547; Pitcher v. Board of Trade, 20 Ill., App., 325; Blair v. City of Waco, 75 Fed. Rep., 800; Birdsell v. Clark, 73 N. Y., 74; State v. City of Patterson, 34 N. J. Law, 163; Thompson v. Schermerhorn, 6 N. Y., 92; Mayor of Baltimore v. Scharf, 54 Md., 499; Lowery v. City of Lexington, 75 S. W. Rep.,

202; Scollay v. County of Butte, 67 Cal., 249; Llano County v. Knowles, 29 S. W. Rep., 549; Llano County v. Johnson, 29 S. W. Rep., 56.

It is self-evident that the school lands are held in trust by the counties for the benefit of the public free schools. Webb County v. School Trustees, 95 Texas, 131, 138; Dallas County v. Club Land and Cattle Co., 95 Texas, 200, 208; Llano County v. Johnson, 29 S. W. Rep., 57. Hence one dealing with public free school lands purchases the same as an ordinary purchaser of trust property.

Grant and Fuller, deraigning title through Israel, who held under the deed from Walker, reciting the void order of the Commissioners Court, are chargeable with knowledge of everything appearing on the face of their muniments of title. Where any infirmity appears, or there is notice of such infirmity as would put a reasonably prudent man on notice, which notice if prosecuted with reasonable diligence would lead to knowledge, one purchasing thereunder can not be held to be an innocent purchaser. Waggoner v. Dodson, 96 Texas, 6; Wethered v. Boon, 17 Texas, 143. Pulliam v. Runnels County, 79 Texas, 363, is most convincing in this respect. It was unequivocally held in that case that a purchaser of county school land is chargeable with notice of the power of the agent passing the title of the county, and that a subsequent purchaser is chargeable with notice of the records of the commissioners court.

BROWN, ASSOCIATE JUSTICE.—On May 14, 1883, Stephens County was the owner of four leagues of land, Nos. 1, 2, 3 and 4, situated in Crosby County, which were granted to Stephens County by the State of Texas for educational purposes. On the date named the Commissioners Court of Stephens County entered the following order: "It is ordered by the court that E. L. Walker is hereby appointed commissioner for the sale of the Stephens County school lands situated in Crosby County and to make title to the same as aforesaid commissioner." League No. 4 had been previously conveyed to parties, in consideration of the location of the said lands, and at the time was claimed by J. A. Stewart, who held that title under regular conveyances. C. W. Israel purchased from the county leagues Nos. 1, 2 and 3, and desired to purchase league No. 4 but would not take the title of Stewart, unless the county would deed the land to him, which it refused to do. Afterwards Israel purchased league No. 4 from J. A. Stewart for $3000 cash, and E. L. Walker made a warranty deed for that league to Israel under and by virtue of the order before copied. Israel paid the consideration in cash to Walker, who paid it to Stewart, then the county treasurer of Stephens County, but Stewart did not account to the county for the money received from Walker, and Walker did not report the sale made by him of league No. 4 to the county. Afterwards Israel sold league No. 4 to Fuller & Grant for a valuable consideration, which was then paid by Fuller & Grant, who purchased in good faith without notice of the facts concerning the sale by Walker to Israel and the failure of Stewart to ac-

count for the money.  Stephens County never did ratify or in any way confirm the sale of league No. 4 made by Walker.  Stephens County instituted this suit in the District Court of Crosby County against the defendants to recover league No. 4.  The venue was changed to Callahan County and in the District Court of that county a trial was had without a jury and judgment was rendered for Stephens County for the land, which was affirmed by the Court of Civil Appeals.

Section 18 of article 5 of the Constitution of this State commands that each county of the State be divided into four commissioners' precincts, in each of which a commissioner shall be elected at each general election and "the commissioners so chosen, with the county judge as presiding officer, shall compose the commissioners court, which shall exercise such powers and jurisdiction over all county business as is conferred by this Constitution and the laws of the State, or as may be hereafter prescribed."  Section 6 of article 7 of the Constitution vests in the counties of the State full title to all lands theretofore or thereafter granted to such counties for "educational purposes," and by this language confers upon each county the power to sell those lands:  "Each county may sell or dispose of its lands in whole or in part, in manner to be provided by the commissioners court of the county.  Said lands and the proceeds thereof, when sold, shall be held by said counties alone as a trust for the benefit of public schools therein; said proceeds to be invested in the bonds of the United States, the State of Texas, or counties in said State, or in such other securities and under such restrictions as may be prescribed by law; and the counties shall be responsible for all investments; the interest thereon and other revenue, except the principal, shall be available fund."

If the Commissioners Court of Stephens County, under the provision of the Constitution quoted, had the power to confer upon E. L. Walker the authority expressed in the order made by the court, as before copied, we are of opinion that the terms of the order are sufficient to enable Walker to make a complete title to the land; and the Court of Civil Appeals having found that Fuller & Grant, who purchased from Israel, were purchasers in good faith for a valuable consideration then paid, without notice of the facts which would impeach the sale as between Israel and the county, then the title of the plaintiffs in error must be sustained.

The Constitution, as before quoted, gives to the commissioners court of each county ample powers to sell the school lands of the county, but it in terms declares that the counties hold "the said land and proceeds thereof, when sold,  *  *  *  alone as a trust for the benefit of the public schools therein."  The county was in the attitude of trustee, for the benefit of the public school fund, in the handling and management of the land, and we must construe the power given to the commissioners court in accordance with the rules which govern trustees in the discharge of their duties.

Learned counsel, who represented the plaintiffs in error, have not con-

tested the proposition that the Commissioners Court should not delegate its discretionary powers, unless the authority to do so is given by the Constitution. That proposition is so well established that we will content ourselves with referring to Fuller v. O'Neil, 69 Texas, 349, in which the subject is very carefully discussed by Chief Justice Willie. But counsel have contended with earnestness (1) that the terms of the Constitution authorized the order under which Walker sold and conveyed the land, and (2) that the effect of the order was that the Commissioners Court exercised the power of fixing the terms of sale, which it was not necessary for the court to determine, therefore it does not delegate any discretion to be exercised by the agent. If either contention be correct, the plaintiffs in error ought to hold the land.

If we eliminate from section 6, article 7, of the Constitution these words, "in manner to be provided by the commissioners court of the county," there would not be in the Constitution any basis for the order in question; hence we must ascertain what those words were intended to express, in order to determine what the Commissioners Court might commit to Walker. "Manner" is the controlling word in the phrase and designates what the commissioners court might provide for. Webster defines manner as "mode of action; way of performing or effecting anything; method," and the courts have given to that word its signification as defined by Webster. People v. English, 139 Ill., 629; Wells v. Bain, 75 Pa. St., 54; Brown v. O'Connell, 36 Conn., 447. In the case last cited, the following provision of the Constitution of the State of Connecticut was under examination: "The judges of the Supreme Court of Errors; of the superior and inferior courts, and all justices of the peace, shall be appointed by the general assembly, in such manner as shall by law be prescribed." The Legislature of that State enacted a law by which the city council of Hartford was empowered to appoint a police judge for the city, and the constitutionality of the law was in question in the case cited. The Supreme Court of Connecticut held that the Legislature could not delegate the power to appoint the judges to the city council, and in construing that portion of the Constitution above quoted, the court said: "The term 'manner' is a comprehensive one, but it is evident that it has reference in that connection to the mode of doing the act prescribed—to the proceedings of the two houses of general assembly in making the appointment—whether by ballot or by resolution, whether by joint or concurrent action of the two houses—and could not have been intended to authorize a delegation of the power to appoint any and all the judges to any officer or tribunal to whom they might think proper to delegate it. The term 'appointed' means, named or designated for or assigned to an office. The act of naming, designating or assigning is necessarily the direct act of the body or person by whom the appointment is made. An appointment therefore by a common council, pursuant to a law of the general assembly, is not an appointment by the assembly, and the construction supposed would render the words 'by the general assembly' superfluous." So with reference to

the constitutional provision now under consideration, the act of selling is necessarily the direct act of the county through its commissioners court, which is empowered to transact all of its business, and a sale by an agent would no more be a sale by the county than the appointment by the city council was an appointment by the Legislature.

It is, however, urged that the general authority to sell, which is given to Walker by the order, requires that he shall sell for cash and at the market price, which counsel for plaintiffs in error claim is such specific direction as shows that the county itself exercised the power of selling and performed all of the acts which required the exercise of discretion in making the sale. It is true that a general power to sell means that the sale must be for cash, but we know of no authority which holds that the power to sell real estate means that it is to be sold for the market value of the property at the time. Such is the rule with regard to factors, but the object of placing the article with a factor is that he may watch the market for the purpose of getting the best price. Bigelow v. Walker, 24 Vt., 149. If, however, it be granted that the general power to sell authorizes the agent to sell for cash at the market value of the property, it does not help the matter for the plaintiffs in error, because to determine what is the market value and other questions connected with the sale is a matter of discretion and judgment on the part of the seller. In Fuller v. O'Neil, before cited, the validity of a sale made under a trust deed by an agent of the trustee, who was not present, being under consideration, the court said: "The grantor of the power is entitled to have his directions obeyed, to have the proper notice of sale given, to have it to take place at the time and place and by the person appointed by him. He gives these directions because he thinks that a sale made by the person selected, and under the circumstances stated, will be to his interest and make his property produce the largest amount of money. Of the prescribed conditions, none is more important than that which requires that the trustee shall in person make the sale. He is chosen because of the confidence the grantor has in his integrity and discretion. The trustee, in making the sale, and during the time the property is under the hammer, is expected to protect the interests of the grantor, to see that no fraud is practiced detrimental to his interests, and that no improper bid is accepted, and that the property is not knocked off without giving fair opportunity for it to bring its reasonable value. Perhaps the agent selected by the trustee to attend to this important matter is not one to whom the grantor himself would have intrusted it. He has reposed confidence in the party selected by him, and that confidence can not be transferred without his consent. The trustee can no more absent himself whilst the sale is going on than he can make it at a time or a place or for a character of consideration different from that authorized in the deed. * * * The act thus performed is not merely ministerial, such as is performed by a crier when the trustee is present directing and superintending the sale; but it requires an exercise of judgment and discretion in the matters men-

tioned, as well as in others." The sale in that case was made at public outcry to the highest bidder, but the court in the forcible language quoted declared the act of selling to involve discretionary power. With stronger reason the objection applies to a private sale with power to convey without approval of the trustee as in this case.

While authority to delegate discretionary powers may be given by an individual to his agent, the power to delegate has not been conferred upon counties in the sale of school lands. If the order had read that the agent, Walker, should sell for cash and for the market value of the property, it would not have relieved it from the objection that the trustee had no power to confer upon the agent the right to determine what is the market price, and whether the property should be sold at the market price of that particular day or time, or at some other day or time.

It is apparent, that, excepting the requirement to sell for cash, the order of the Commissioners Court of Stephens County vested in Walker all of the authority to sell the land that the Commissioners Court had under the Constitution, and was void because the county, as a trustee, could not give such authority to the agent. Mech. on Agency, sec. 362; Daylight Burner Co. v. Odlin, 51 N. H., 56.

It is not intended to limit the power, which has been granted by the Constitution to the commissioners court, to manage, according to its discretion and to the best advantage, the lands held in trust for the public free schools; but simply to hold, as we do, that the commissioners court can not commit their discretion in making sale to an agent.

We find no error in the judgment of the Court of Civil Appeals, and it is affirmed.