## WILLIAMS et al. v. PURE OIL CO. et al.
### No. 10970.

Court of Civil Appeals of Texas. Dallas. April 2, 1932.

Rehearing Denied May 7, 1932.

Jerome P. Kearby, of Tyler, and Adams & Harrell, of Dallas, for plaintiffs in error.

Vinson, Elkins, Sweeton & Weems and David T. Searls, all of Houston, and R. G. Storey, of Dallas, for defendants in error.

JONES, C. J.

This suit was instituted in the district court of Van Zandt county by plaintiffs in error, in the form of trespass to try title, to recover one-tenth interest in 132.8 acres of land against those claiming to be the owners of the entire fee, and against the Pure Oil Company, claiming to be the owner of a mineral lease of the entire tract, for a one-tenth net interest in the value of the oil taken from producing wells on the land. There are also made parties defendant a number of other persons and corporations, some of whom claim royalty in the oil and minerals taken from the land, and others who were connected with the mineral lease by various conveyances from the fee owner, but whose interests appear now to be owned, through mesne conveyances, by the Pure Oil Company. The case was tried to a jury, submitted on special issues, and a judgment entered by the trial court, on the jury's verdict on such issues against plaintiffs in error, and in favor of defendants in error. A writ of error has been duly prosecuted, and the following is a statement of the case:

Letters patent were issued by the state of Texas to Nacogdoches county, for educational

purposes, to 13 labors of land, located in Van Zandt county. This land was platted into blocks, and the land in question constituted block No. 2. On February 9, 1880, the commissioners' court duly passed and entered of record the following order: "It is ordered by the Court that R. H. Irion be and he is hereby appointed attorney in fact for Nacogdoches County to generally control, bargain, sell and convey and execute and deliver in the name of said County, deeds to and receive the purchase money for any and all purchase of any part of the four (4) leagues of land patented to said County for educational purposes, and situated in the Counties of Henderson, Van Zandt, Upshur and Trinity, provided all sales of said land shall be made in accordance with the terms of contract made with said Irion, at February term of this court, hereby ratifying all acts done by said Irion as attorney in fact as aforesaid, as if done in proper person present by this Court; and it is further ordered by the Court that the County Clerk of said County be and he is hereby ordered to furnish said Irion with a certified copy of this order under his hand and the seal of the County Court in lieu of the Seal of the Commissioners' Court, this Court having no regular seal of its own."

In pursuance of this order and in exercise of the authority therein given, R. H. Irion, as attorney in fact for Nacogdoches county, conveyed to D. D. Lybrand the land in question, for the consideration of $265.60, of which consideration $88.53⅓ was paid in cash, and the remainder by the execution of two promissory notes in favor of Nacogdoches county, each in the sum of $88.53⅓, drawing 10 per cent. interest and maturing, respectively, January 1, 1881, and January 1, 1882. A vendor's lien was retained on the land to secure payment of the notes.

The undisputed evidence is that these notes were paid and that Nacogdoches county received in money, for educational purposes, the entire consideration for the land. The minutes of the commissioners' court of Nacogdoches county do not show any report of this sale to the court, or any formal order approving it. However, on August 8, 1927, the commissioners' court executed a special warranty deed for the recited consideration of $1 to "D. D. Lybrand and all those persons, firms or corporations, holding title under him, his heirs and assigns, of the right, title and interest now or heretofore owned by said Nacogdoches County in and to all that certain lot, tract or parcel of land lying and being situated in the County of Van Zandt, State of Texas." Then follows a description of the land in question, and the further recitation:

"The above described land having heretofore been conveyed by R. H. Irion, attorney in fact for Nacogdoches County, Texas, to D. D. Lybrand by deed dated Jan. 14th, 1880, recorded in Vol. 27, p. 621, of the deed records of Van Zandt County, Texas, under a power of attorney from Nacogdoches County, Texas, as shown in Book E, pages 427 and 428 Minutes of the Commissioners Court of Nacogdoches County, Texas and in said deed a vendor's lien was retained to secure the payment of two certain promissory notes for the sum of Eighty-eight and 53/100 Dollars each, dated January 14th, 1880, due respectively January 1st, 1881 and January 1st, 1882, with interest at the rate of ten per cent. per annum until paid, and Whereas the said vendor's lien notes as aforesaid described in said deed have been fully paid, both principal and interest, same are hereby fully released and declared to be fully discharged and the vendor's lien retained in said deed is fully released and discharged.

"This deed is made and executed for the purpose of conveying whatever interest Nacogdoches County might or did have in and to the above described land and premises by reason of the fact it does not appear that the above sale and conveyance was ever ratified and confirmed by the Commissioners Court of Nacogdoches County, Texas, and for the purpose of ratifying and confirming said sale as well as to convey title to said land to said D. D. Lybrand, and all persons, firms, or corporations holding or claiming title to any part of said land, by, through or under said D. D. Lybrand, his heirs and assigns."

D. D. Lybrand is the common source of title, and he died long before the 1927 deed by Nacogdoches county. There were born to D. D. Lybrand and wife thirteen children, three of whom died previous to the death of either of their parents, and without having been married. The other ten children reached maturity and married. One of these was named Laura, who married A. A. Ames, and died two or three years after her marriage, leaving a daughter, who is now Mrs. Mackie Williams and who, as plaintiff in error, is asserting ownership to a one-tenth interest in this land, as the only heir to her mother's interest in the estate of her grandparents, Mr. and Mrs. D. D. Lybrand. Her father, A. A. Ames, is still living, and he executed a quitclaim deed in her favor to any interest he might have in the land by virtue of his being the surviving husband of Mrs. Laura Ames, née Lybrand.

The land in question was the community property of D. D. Lybrand and wife. On January 14, 1889, after the death of Mr. and Mrs. D. D. Lybrand, all of the Lybrand children who had reached maturity were living, except Mrs. Laura Ames. Both D. D. Lybrand and his wife died intestate, and there was no administration on their respective estates. On said date, seven of these surviving children duly conveyed to their brother, W. B. Lybrand, their undivided interest in the land in question for the recited cash consideration of $1,050. So that on January 14, 1889, W. B. Lybrand owned in fee an eight-tenths inter-

est in the land in question; his brother, J. M. Lybrand, owned a one-tenth interest therein, and Mrs. Mackie Williams, then a small child, owned the other one-tenth interest, subject to the life estate of her father, A. A. Ames, in a one-third interest in one-half of her interest, or a one-sixtieth interest in the entire tract of land.

On December 1, 1894, W. B. Lybrand and J. M. Lybrand, joined by their wives, owners of a nine-tenths interest in the land, conveyed by warranty deed the entire tract, described by metes and bounds, to W. T. Jarman for a recited consideration of $1,200. The deed to W. B. Lybrand recites that those named as grantors are the "natural children of D. D. Lybrand, deceased, and heirs at law of the said D. D. Lybrand, deceased. * * *" There is no recitation in the deed to Jarman with reference to who were the heirs of D. D. Lybrand, and no mention in either of these two conveyances of the existence of the outstanding interest in Mrs. Mackie Williams. Before the date of the deed to Jarman, Mrs. Williams, then a child, had been taken by her father to Eastland county; but none of the Lybrand children knew where they had gone or had heard from them until a short time before this suit was filed. The father and mother of Mrs. Williams were married in the community in which the land is located, and until the wife's death lived in such community, and after her death, the child, then about one year of age, was left with her grandfather until his death, when at the age of about six years, she was taken by her father to Eastland county. Mr. and Mrs. Jarman knew Mrs. Laura Ames and her husband, and knew that they were married, but Mrs. Jarman did not know that there was a child born to them. Mr. Jarman died before oil was discovered on the land in question. This well on the Jarman land was the discovery well in the Van oil field.

Mrs. Jarman testified at the trial that, on the occasion of the deed by the Lybrands to them, she and her husband went to Wills Point, where W. B. Lybrand lived, and that before the deed was executed her husband asked W. B. Lybrand about the title, and that he said there was no interest in Mrs. Laura Ames, for the reason that she was dead. She further testified that she did not inquire whether Mrs. Laura Ames left a child.

W. B. Lybrand testified to the effect that he informed Mr. Jarman that they were not selling the interest of the little girl, and that Jarman replied that he would take his chance on securing her interest.

J. D. Rushing, who married one of the daughters of D. D. Lybrand, and joined with his wife in the deed to W. B. Lybrand, testified, in effect, that, about a year after Jarman had purchased the land, he was in their home and asked Jarman how much he paid for the land, and Jarman said $1,200, to which Rushing replied that he got it mighty cheap. Jarman then stated that he had to settle with the little girl for her interest in the land.

Mrs. Jarman and her surviving children testified, in effect, that the land had been fenced and cultivated by them from the time of its purchase to the present time, and during this entire time ownership had been asserted to the entire tract of land; a number of other witnesses testified to the same effect. This would make a period of approximately 38 years that the land was claimed, occupied, and used by the Jarmans, as owners of the entire tract of land. Taxes for all of these years were paid by the Jarmans. Mrs. Jarman and her children all testified that they never heard of plaintiff in error's outstanding interest in the land. Ames, the father of Mrs. Williams, testified that he never asserted any ownership or interest in the land, either for himself or his daughter. Mrs. Mackie Williams testified that she never knew that she had an interest in the land until after the 1927 deed, and that previous to that time she never had asserted any interest in the land.

The Pure Oil Company, in its answer to the merits, pleaded that it was an innocent purchaser, and that in good faith it had expended a large sum of money, much more than its income from the producing wells on the land, in its development for oil, believing that the lessor owned the land described in the lease contract; and also pleaded the three, five, ten, and twenty-five year statutes of limitation. Mrs. Jarman's answer to the merits was, in effect, a plea of the four statutes of limitation in respect to her title to the land. It is not necessary to refer to the pleadings of the other parties.

The case was submitted to the jury on special issues. These issues, and the verdict of the jury thereon, are as follows:

"Issue No. 1: Do you find from a preponderance of the evidence that at the time W. T. Jarman and Matilda Jarman purchased the land in controversy from W. B. and J. M. Lybrand, that they knew that Maxie Ames owned an undivided interest in the land in controversy? Answer: No.

"Issue No. 2: Do you find from a preponderance of the evidence that at the time W. T. Jarman and Matilda Jarman went into possession of the land in controversy that W. T. Jarman then recognized Maxie Ames, the plaintiff in this suit, as owning an interest with him in the land in controversy, if any interest she did own? Answer: No.

"Issue No. 3: Do you find from a preponderance of the evidence that W. T. Jarman and Matilda Jarman, at any time prior to ten years before the filing of this suit, repudiated or denied the rights of the plaintiff, Maxie Williams, if any right she had, to the

land in controversy by claiming and asserting title to the land as their own hostile to and adversely to the claim of plaintiff? Answer: Yes.

"Issue No. 4: If you have answered the foregoing question No. 3 'No,' then you need not answer this question; otherwise answer: Do you find from a preponderance of the evidence that such repudiation, if any, the denial of the rights of the plaintiff to any interest in the land in controversy, if any, or the assertion of hostile or adverse claim to plaintiff's interest, if any, were such nature or character as would put a person of ordinary care and prudence, under all the facts and circumstances in this case, upon notice that W. T. Jarman and Matilda Jarman were claiming and asserting title to all of the land in controversy as their own, and against all claims of adverse parties? Answer: Yes."

■ In connection with this charge, the court correctly defined the term, "hostile" or "adverse claim." While plaintiffs in error attack all of such findings as not being supported by the evidence, we are of opinion that such findings are supported by evidence of a substantial nature, and adopt them as the findings of this court.

The main contentions of plaintiffs in error, briefly stated, are: The deed from Irion, as attorney in fact, is void, and hence (a) title to the land in controversy remained in Nacogdoches county until the deed of August 8, 1927, when by the terms of such deed an undivided one-tenth interest in the land vested in Mrs. Mackie Williams, and, as this suit was instituted less than three years after the execution of this deed, no statute of limitation was set in motion; and (b) if the deed from Irion, as attorney in fact for Nacogdoches county, was subsequently ratified by the county, and the title to the land thereby perfected in D. D. Lybrand, from the date of such deed, there is no limitation in favor of defendants in error, for the reason that, under the undisputed evidence, when Jarman went into possession of said land under such deed he held such possession as a cotenant with plaintiff in error, and as there is no evidence showing notice to her of a repudiation of plaintiff in error's ownership, and that the verdict of the jury to the contrary has no evidence to support it. These contentions of plaintiffs in error are before this court on proper assignments of error and appropriate propositions of law.

■ Was Nacogdoches county divested of title to the land previous to the deed of August 8, 1927? The order of the commissioners' court of Nacogdoches county, appointing Irion as attorney in fact, authorized him "to generally control, bargain, sell and convey" the school land of said county, located in Van Zandt county. This power rested alone in Nacogdoches county, as a trustee of the school land granted by the state to the county, and could not be delegated by such county to any one else. Article 7, § 6 State Constitution; Logan v. Stephens County, 98 Tex. 283, 83 S. W. 365. A county desiring to dispose of its school land may select an agent to canvass for a purchaser, but cannot delegate to such agent, by power of attorney or otherwise, the power to fix the terms on which school land is to be sold, for this is a nondelegable duty resting alone in the county, to be exercised through its commissioners' court. So, when Irion agreed with D. D. Lybrand on the price and terms for which the land was sold, executed, and delivered to him the deed, and received the cash payment and the two vendor lien notes, in consideration of the conveyance, title to the land did not pass to Lybrand, because Irion, in thus attempting to consummate the conveyance, by exercising his own discretion as to terms of sale, exercised a power which could not be legally conferred on him. Logan v. Stephens County, supra; Gallup v. Liberty County, 57 Tex. Civ. App. 175, 122 S. W. 291.

■ A sale of county school land is valid only when the commissioners' court, as the constitutional agent of the county for disposing of its school lands, has exercised the discretion delegated to it by the Constitution, in respect to the terms of a sale. This discretion as to terms should be exercised before the sale is attempted to be consummated; but we cannot see why there is not just as complete an exercise of this discretion by any subsequent act or acts of the county clearly approving an unauthorized sale by an attorney in fact. In other words, a county, acting through its commissioners' court, may ratify and thereby adopt the unauthorized act of an attorney in fact of the sale of its school land, and thereby render the sale valid. Gallup v. Liberty County, supra; Brazoria County v. Padgitt (Tex. Civ. App.) 160 S. W. 1170; Slaughter Cattle Co. v. Potter County (Tex. Civ. App.) 235 S. W. 295.

In the instant case, there was no formal order approving the sale by Irion, as attorney in fact, to D. D. Lybrand. Does the subsequent conduct of the county, acting through its commissioners' court, necessarily imply such an approval?

■■ The undisputed evidence shows that the money representing the cash payment was at once paid into the commissioners' court, and went into the Nacogdoches county school fund, and that the two deferred payments, represented by the two vendor's lien notes, were paid, and this money went into the school fund of said county. When Irion tendered the cash payment and the two vendor's lien notes to the commissioners' court, such court was under no legal obligation to accept same as the consideration for the sale of the land. It was perfectly free to decline to ac-

cept the consideration and to repudiate the sale; in fact, it was the official duty resting upon each member of such court to do so, unless he approved the terms of the sale in their entirety. It is presumed that a public official, charged with a duty relating to his office, performs his legal duty, until the contrary is shown. In the instant case, it is presumed that, when the members of the commissioners' court of Nacogdoches county received the consideration paid by the purchaser of this land, they determined that the sale conformed to their best judgment in respect to its terms. This act of the commissioners' court, of accepting the consideration of the sale, and placing same to the credit of the school fund of the county, amounted in law to a ratification of the act of Irion, the attorney in fact, and made the sale valid from the date of the delivery of the deed to D. D. Lybrand. Gallup v. Liberty County; Brazoria County v. Padgitt; Slaughter Cattle Co. v. Potter County, supra.

We hold therefore that, although the deed of Irion, as attorney in fact for Nacogdoches county, was insufficient within itself to vest title to the land in D. D. Lybrand, this invalidity was cured by a clear ratification of the sale by the commissioners' court of said county, and that after such ratification title to the land became vested in D. D. Lybrand from the date of the deed. We also hold that, the land being community between D. D. Lybrand and his wife, both dying intestate, title to the land at their decease vested in their heirs, under the law of descent and distribution, and that plaintiff in error was vested with title and the right of possession to an undivided one-tenth interest in the land on the death of D. D. Lybrand, subject to the life estate in favor of her father. It follows that Nacogdoches county owned no interest in the land when it executed the deed of August 8, 1927.

As W. T. Jarman purchased from the owners of a nine-tenths interest in the land, he only acquired title to such nine-tenths interest, though his deed clearly recited the sale to him of the entire tract of land, and described it by metes and bounds. Plaintiff in error was the owner of her one-tenth interest at the time the suit was tried, unless she became divested of such title by limitation. Was she so divested of title? Defendants in error plead the three, five, ten, and twenty-five year statutes of limitation. The court submitted issues of fact which apply to the five and ten year statutes. The five-year statute is article 5509, R. S. 1925, and provides that: "Every suit to recover real estate as against a person having peaceable and adverse possession thereof, cultivating, using or enjoying the same, and paying taxes thereon, if any, and claiming under a deed or deeds duly registered, shall be instituted within five

years next after cause of action shall have accrued, and not afterward. * * *"

The ten-year statute is article 5510, supra, and provides that: "Any person who has the right of action for the recovery of lands, tenements or hereditaments against another having * * * adverse possession thereof, cultivating, using or enjoying the same, shall institute his suit therefor within ten years next after his cause of action shall have accrued, and not afterward."

Article 5515, supra, defines "adverse possession" to be "an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another."

In the instant case, defendants in error claimed adverse possession against a cotenant, and such possession may or may not be adverse to the cotenant out of possession, depending upon whether the latter is visited with notice of the adverse claim of those in possession. Moody v. Butler, 63 Tex. 210; Honea v. Arledge et al., 56 Tex. Civ. App. 296, 120 S. W. 508. The cotenant in possession must evidence a clear intent to claim the entire common property to the exclusion of the other cotenant, and such intent must be evidenced by an act or acts so notorious as reasonably to convey the idea that all of the joint property is claimed. When such act has been committed by the cotenant in possession, then the cotenant out of possession must take notice, at his peril, of the claim of the one in possession. When such overt act or acts have been taken by the cotenant in possession, as said in Honea v. Arledge, supra, it is immaterial that the cotenant out of possession is not in the vicinity where the land is situated and did not have actual knowledge of the overt act or acts of the cotenant in possession.

In the instant case, there is raised the issues of fact submitted to the jury on the claim of limitation. Jarman went into possession with a deed, conveying to him in express terms the entire tract of land, and specifically describing by metes and bounds such tract. He claimed the entire tract as his own in such an open and notorious manner as reasonably to convey to any one the intent to take as his own all of the land. This is testified to by a number of witnesses who had known of Jarman's possession of the land from the inception. This claim extended over a period of approximately 38 years, and was sufficient, if the witnesses were believed by the jury, to perfect his title to all the land under the ten years' statute of limitation. As opposed to this contention is the circumstance that the Jarmans knew, before the land was purchased, that plaintiff in error's parents were married, and that her mother was dead, but did not know that a

child had been born, though no inquiry was made in reference thereto; the evidence of W. B. Lybrand, who claimed that Jarman knew of the existence of plaintiff in error when she was a child, and told the witness that he would subsequently buy her interest, and of the testimony of the other witness that a year after he purchased the land Jarman mentioned to him the fact that he would have to buy the interest of the little girl. Neither the fact that Jarman could have discovered by inquiry that plaintiff in error owned a one-tenth interest in the land conveyed to him, nor the fact that he recognized her interest when he went into possession, is conclusive of the fact that he did not afterwards repudiate her interest, but openly and notoriously for many years claimed the property as his own. We therefore hold that the court correctly submitted the issues of fact, that the findings of the jury on such issues are sustained by the evidence, and that defendants in error have title to the land in question, under the ten years' statute of limitation.

■ The deed from Lybrand to Jarman was not filed for record until March 9, 1921. This deed, when recorded, unquestionably visited notice upon plaintiff in error that Jarman was claiming all of the land in question, because such deed conveyed all of the land and described it by metes and bounds. More than five years elapsed after the recording of this deed before this suit was filed, and the undisputed evidence shows that all of the elements necessary to sustain title by the five years' statute of limitation were present in this case. We also hold that defendants in error have title to the land in question under the five-year statute of limitation.

■ It is claimed by plaintiffs in error that in no event would limitation run against her as remainderman to the life estate of her father, for she had no right of possession to such interest. We do not believe this contention can be sustained. If the title in the fee to the land failed because of the law of limitation, the title to the life estate failed under the same plea. McConnico et al. v. Thompson et al., 19 Tex. Civ. App. 539, 47 S. W. 537 (writ of error refused); Elcan et al. v. Childress, 40 Tex. Civ. App. 193, 89 S. W. 84 (writ of error refused); Olsen v. Grelle (Tex. Com. App.) 228 S. W. 927; Texas Jurisprudence, vol. 2. page 30.

We have carefully examined all other assignments of error, with the result that they are overruled. Finding no reversible error, it is our opinion that this case should be affirmed, and it is so ordered.

Affirmed.

Appellants, in their motion for rehearing, insist that there is no evidence in the record to sustain the finding of this court that Nacogdoches county received for its school fund the cash payment and the proceeds of the two vendor lien notes, the consideration paid to Irion, the attorney in fact for said county, for the conveyance of February 9, 1880. This finding of fact was based on the recitals in the ratification deed, executed by Nacogdoches county on August 8, 1927, and the further fact that this deed was executed without any additional consideration passing to the county. If Nacogdoches county had not received the consideration of the 1880 deed, for the benefit of its school fund, it was the official duty of the county commissioners to demand such consideration before executing the second conveyance, and the presumption of law is that public officers, in performing public acts, perform their official duties. We are therefore of the opinion that no other conclusion than the one announced in the original opinion can be drawn from this evidence, and the objection is overruled.

We have carefully considered all other grounds of the motion for rehearing, with the result that we believe such motion should be overruled; and it is so ordered.

Overruled.