## ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

December 28, 2005

The Honorable Cheryl Swope Lieck
Chambers County Attorney
Post Office Box 1200
Anahuac, Texas 77514

Opinion No. GA-0388

Re: Whether Chambers County has authority to contract with a bank to invest and manage its permanent school fund   (RQ-0364-GA)

Dear Ms. Lieck:

You ask whether Chambers County has authority to contract with a bank to invest and manage its permanent school fund.[1]

Your questions concern the public school lands granted to Chambers County for the benefit of the county's public schools. *See* Request Letter, *supra* note 1, at 2. The Republic of Texas began making land grants to counties for these purposes in 1838. *See* TEX. CONST. art. VII, § 6 interp. commentary (Vernon 1993). Article VII, section 6 of the Texas Constitution provides for the county school lands' ownership and disposition:

> All lands heretofore, or hereafter granted to the several counties of this State for educational purposes, are of right the property of said counties respectively, to which they were granted, and title thereto is vested in said counties, and no adverse possession or limitation shall ever be available against the title of any county. Each county may sell or dispose of its lands in whole or in part, in manner to be provided by the Commissioners Court of the county. *Said lands, and the proceeds thereof, when sold, shall be held by said counties alone as a trust for the benefit of public schools therein*; said proceeds to be invested in bonds of the United States, the State of Texas, or counties in said State, or in such other securities, and under such restrictions as may be prescribed by law; *and the counties shall be responsible for all investments*; the interest thereon, and other revenue, except the principal shall be available fund.

---

[1]*See* Letter from Honorable Cheryl Swope Lieck, Chambers County Attorney, to Honorable Greg Abbott, Attorney General of Texas (July 6, 2005) (on file with Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

*Id.* art. VII, § 6 (emphasis added).[2] Counties may lease or sell their school lands. *See Fall County v. Delaney*, 11 S.W. 492, 492 (Tex. 1889). A provision in the Education Code related to article VII, section 6 provides that county school lands and the proceeds from their sale constitute the county permanent school fund. *See* TEX. EDUC. CODE ANN. tit. 2, § 17.81-App. (Vernon 1996).[3] County permanent school fund investment opportunities are limited. *See id.* § 17.82(b) (enumerating approved permanent school fund investments); *see also* TEX. CONST. art. VII, § 6 ("said proceeds to be invested in bonds of the United States, the State of Texas, or counties in said State, or in such other securities, and under such restrictions as may be prescribed by law"). The revenues generated either by lease or investment of the county permanent school fund are placed in the county available school fund. *See* TEX. CONST. art. VII, § 6; TEX. EDUC. CODE ANN. tit. 2, § 17.82-App. (Vernon 1996); Tex. Att'y Gen. Op. No. O-2111 (1940) at 3.

Most counties have sold their county school lands and invested the proceeds in authorized securities. *See* 36 DAVID B. BROOKS, TEXAS PRACTICE: COUNTY AND SPECIAL DISTRICT LAW § 30.2 (2002). Chambers County, however, still holds its land, which it uses to generate revenue for its available school fund by leasing the land for oil and gas production, grazing and hunting. *See* Request Letter, *supra* note 1, at 2. You note that Chambers County's permanent school fund has assets currently worth about $6,000,000. *See id.* You also note that "[w]ith the increase in the size of the permanent school fund, the complexities with oil and gas leases and negotiation, the rapid market fluctuation in the interest rates, record keeping, accounting, and other general oversight responsibilities, Chambers County is having a difficult time keeping up with the school land and school funds." *Id.* Thus, you ask whether Chambers County has the authority to hire a professional investment entity, like a bank, to manage the land and other assets of its permanent school fund. *Id.* at 1.

Texas Constitution article VII, section 6 has been construed in numerous court opinions and in this office's opinions as creating an express trust for which the county is trustee.[4] The county holds the proceeds as an express trust and invests these funds as an exercise of its judgment and discretion. *See Comanche County v. Burks*, 166 S.W. 470, 473 (Tex. Civ. App.–Fort Worth 1914, writ ref'd). Similarly, county school land management is an exercise of judgment and discretion by the county as trustee over the land. *See Logan v. Stephens County*, 83 S.W. 365, 366 (Tex. 1904).

---

[2]*See also* TEX. LOC. GOV'T CODE ANN. § 263.003(b) (Vernon 1999) (commissioners court may dispose of county school lands only as provided by law); Act of June 2, 1969, 61st Leg., R.S., ch. 889, § 1, secs. 17.81-.83, 1969 Tex. Gen. Laws 2735, 2846-47, *reprinted in* TEX. EDUC. CODE ANN. tit. 2, §§ 17.81-.83-App. (Vernon 1996) (former Education Code sections 17.81-.83).

[3]These provisions were repealed in 1995, but Education Code section 11.301 provides for their continued application to county public school lands. *See* Act of May 27, 1995, 74th Leg., R.S., ch. 260, § 58, 1995 Tex. Gen. Laws 2207, 2498; TEX. EDUC. CODE ANN. tit. 2, § 11.301-App. (Vernon 1996).

[4]*See Delta County v. Blackburn*, 93 S.W. 419, 420, 422 (Tex. 1906) (counties are trustees for benefit of state's public schools); *accord Comanche County v. Burks*, 166 S.W. 470, 473 (Tex. Civ. App.–Fort Worth 1914, writ ref'd); *County Sch. Trs. v. Brazoria County*, 240 S.W. 675, 676 (Tex. Civ. App.–Galveston 1922, no writ); *see also, e.g.*, Tex. Att'y Gen. Op. No. JC-0004 (1999) at 1-2 (stressing the fiduciary nature of a county's duty to invest the county permanent school fund); H-506 (1975) at 2 (county commissioners court acts in fiduciary capacity as school fund trustee); TEX. CONST. art. VII, § 6 ("Said lands, and the proceeds thereof, when sold, shall be held by said counties alone as a trust for the benefit of public schools therein.").

It is well settled that the commissioners court has no power to delegate to another person or entity its discretionary authority over the land it owns as an asset of its permanent school fund. *See Williams v. Pure Oil Co.*, 78 S.W.2d 929, 931 (Tex. 1935); *accord Potter County v. C. C. Slaughter Cattle Co.*, 254 S.W. 775, 777-78 (Tex. Comm'n App. 1923, judgm't adopted). For the same reasons, the county has no power to delegate to another person or entity its discretionary authority to invest and manage the non-land assets of its county permanent school fund. *See* Tex. Att'y Gen. Op. No. JC-0399 (2001) at 5 (opining that a provision in the Texas Property Code, which allows trustees of a trust to delegate investment decisions to an investment agent, does not overcome article VII, section 6's constitutional mandate that county permanent school fund investment decisions be made by the county); *see also* TEX. CONST. art. VII, § 6 ("and the counties shall be responsible for all investments").

You nevertheless direct us to Government Code chapter 2256, the Public Funds Investment Act, as relevant to this discussion. *See* Request Letter, *supra* note 1, at 4-7; *see also* TEX. GOV'T CODE ANN. §§ 2256.001-.055 (Vernon 2000); *id.* § 2256.001 ("This chapter may be cited as the Public Funds Investment Act."). The Public Funds Investment Act, among its provisions, permits a county as a local government to "contract with an investment management firm . . . to provide for the investment and management of its public funds or other funds under its control." *Id.* § 2256.003(b); *see also id.* § 2256.002(7) (defining "local government" to include counties). This section, you assert, authorizes Chambers County to contract with a bank to manage Chambers County's permanent school fund. *See* Request Letter, *supra* note 1, at 5. However, neither the Public Funds Investment Act nor any other statutory authority overcomes article VII, section 6's constitutional requirement that counties shall be responsible for the county public school land and investments. Thus, the Public Funds Investment Act's language notwithstanding, until Texas amends the constitution to authorize counties to delegate their permanent school fund trustee duties, Chambers County is the only entity authorized to invest and manage its permanent school fund. Of course, nothing would prohibit a county from employing an investment expert's services, like a bank's, so long as the expert's compensation does not come from the county's permanent school fund or available school fund and so long as the county maintains its decision-making authority. *See Matagorda County v. Casey*, 108 S.W. 476, 477 (Tex. Civ. App.–Fort Worth 1908, writ ref'd).

You also ask two related questions the answers to which are premised on an opinion finding authority for Chambers County to delegate its trustee duties over its permanent school fund. Consequently, we need not address them.

## S U M M A R Y

Chambers County may not contract with a bank to invest and manage its permanent school fund.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

NANCY S. FULLER
Chair, Opinion Committee

Daniel C. Bradford
Assistant Attorney General, Opinion Committee